No. 22-2664

# In the United States Court of Appeals for the Eighth Circuit

Scott Burnett, Ryan Hendrickson; Jerod Breit; Scott Trupiano; Jeremy Keel,

*Plaintiffs-Appellees,*

Frances Harvey; Hollee Ellis; Shelly Dreyer,

*Plaintiffs,*

Rhonda Burnett,

*Plaintiff-Appellee,*

v.

National Association Of Realtors,

*Defendant,*

HomeServices Of America,

*Defendant-Appellant,*

Keller Williams Realty, Inc.; Realogy Holdings Corp.,

*Defendants,*

BHH Affiliates, LLC; HSF Affiliates, LLC,

*Defendants-Appellants,*

RE/MAX LLC,

*Defendant.*

Appeal from the United States District Court
for the Western District of Missouri – Kansas City, No. 4:19-cv-00332-SRB.
The Honorable **Stephen R. Bough**, Judge Presiding.

## BRIEF OF DEFENDANTS-APPELLANTS

ROBERT D. MACGILL
MATTHEW T. CIULLA
SCOTT E. MURRAY
MACGILL PC
156 E. Market St., Suite 1200
Indianapolis, IN 46204
(317) 721-1253

JAY N. VARON
JENNIFER M. KEAS
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 600
Washington, DC 20007
(202) 672-5300

BRIAN C. FRIES
LATHROP GPM
2345 Grand Blvd., Suite 2200
Kansas City, MO 64108
(816) 292-2000

*Counsel for Defendants-Appellants*
*HomeServices of America, Inc., BHH Affiliates, LLC,* and *HSF Affiliates, LLC*

COUNSEL PRESS · (866) 703-9373 PRINTED ON RECYCLED PAPER 

## SUMMARY OF THE CASE AND ORAL ARGUMENT STATEMENT

It is jurisdictionally impossible for a district court to grant a motion to compel arbitration as to unnamed class members until the class is certified. These putative class members are absent and are not before the court until that time.

HomeServices filed its motion to compel these absent class members to arbitrate their claims nine business days after class certification. The district court determined that this was too late. It also found waiver in light of HomeServices' defense against the claims of non-arbitrating class members.

Both inquiries were erroneous. A waiver cannot result from the failure to file an impossible motion. And Appellees admit that HomeServices has faced at all times the claims of 377,000 non-arbitrating individuals. The fact that Appellees have joined non-arbitrating and arbitrating individuals together in one class cannot require HomeServices to choose between its arbitration rights with one group and defending itself against the other.

HomeServices requests twenty (20) minutes of oral argument to clarify that putative class members are absent until class certification.

i

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. Rule of App. P. 26.1 and Eighth Circuit Rule 26.1A, HomeServices discloses the following corporate interests:

1. HomeServices of America, Inc. ("HSoA"): Berkshire Hathaway, Inc. owns Berkshire Hathaway Energy Company, which owns HSoA. No publicly traded entity owns 10% or more of HSoA's stock.

2. HSF Affiliates, LLC ("HSF"): Berkshire Hathaway, Inc. owns Berkshire Hathaway Energy Company, which owns HSoA, which owns HS Franchise Holding, LLC, which owns HSF. No publicly traded entity owns 10% or more of HSF.

3. BHH Affiliates, LLC ("BHH"): Berkshire Hathaway, Inc. owns Berkshire Hathaway Energy Company, which owns HSoA, which owns HS Franchise Holding, LLC, which owns HSF, which owns BHH. No publicly traded entity owns 10% or more of BHH.

Appellate Case: 22-2664    Page: 3    Date Filed: 10/19/2022 Entry ID: 5209248

# TABLE OF CONTENTS

SUMMARY OF THE CASE AND ORAL ARGUMENT STATEMENT .......................................................................i

CORPORATE DISCLOSURE STATEMENT ...........................................ii

TABLE OF AUTHORITIES ...................................................... v

JURISDICTIONAL STATEMENT ................................................ 1

STATEMENT OF THE ISSUES .................................................. 1

STATEMENT OF THE CASE ................................................... 3

Factual Background ........................................................ 3

I.     Plaintiffs' Alleged Injury Arises From Listing Agreements............ 3

II.    HomeServices' Customers Agree to Arbitrate "Any Controversy or Claim" or "Any Dispute or Claim" ........................ 4

Procedural History ........................................................ 9

III.   Plaintiffs Plead A Case Against "HomeServices," Which Includes HomeServices of America, Inc.'s Missouri Subsidiary Companies ................................................... 9

IV.    HomeServices Alerts the Court and Plaintiffs to Arbitration Rights.................................................................... 10

V.     HomeServices Makes Its First Motion to Compel Arbitration and the District Court Denies It ..................................... 11

VI.    HomeServices Seeks a Stay of All Proceedings Against It Pending Adjudication of Its Arbitration Rights; Plaintiffs Oppose and the District Court Denies........................... 11

VII.   This Court Affirms the District Court's Denial of HomeServices' First Motion to Compel Arbitration................................ 13

VIII.  The Court Certifies the Class and HomeServices Immediately Moves to Compel Unnamed Class Members to Arbitrate............ 14

SUMMARY OF THE ARGUMENT ...................................... 15

Appellate Case: 22-2664    Page: 4    Date Filed: 10/19/2022 Entry ID: 5209248

ARGUMENT ................................................................ 18

I.   Standard of Review .............................................. 20

II.  HomeServices Did Not Waive Its Right to Arbitrate Against
     Unnamed Class Members ....................................... 21

III. The Arbitrator Should Decide All Other Gateway Issues ............ 29

     A.   The Arbitration Agreements Contain Two Independently-
          Sufficient Delegation Clauses ................................ 30

          1.   Incorporation of the AAA Rules ..................... 30

          2.   Delegation of Issues of Interpretation and
               Enforcement ........................................ 33

IV.  If This Court Entertains Gateway Questions, It Should Find
     That HomeServices May Compel Arbitration Here ................... 35

     A.   HomeServices May Enforce the Arbitration Agreements .... 36

          1.   Single-Unit Estoppel ................................ 36

          2.   Equitable or Alternative Estoppel ................... 39

          3.   Close-Relationship Estoppel ........................ 42

     B.   The Word "Parties" Does Not Change This Result ............ 43

CONCLUSION  .......................................................... 46

CERTIFICATE OF COMPLIANCE ........................................ 47

CIRCUIT RULE 28A(h) CERTIFICATION  ............................... 48

CERTIFICATE OF SERVICE .............................................. 49

Appellate Case: 22-2664     Page: 5     Date Filed: 10/19/2022 Entry ID: 5209248

# TABLE OF AUTHORITIES

*ABF Freight Sys. v. Int'l Bhd. of Teamsters,*
  728 F.3d 853 (8th Cir. 2013) .......................................................... 21, 25

*Barton Enters. v. Cardinal Health,*
  No. 4:10 CV 324 DDN, 2010 U.S. Dist. LEXIS 52435
  (E.D. Mo. May 27, 2010) ........................................................ 17, 40, 42

*Blanton v. Domino's Pizza Franchising LLC,*
  962 F.3d 842 (6th Cir. 2020) ............................................ 16, 29, 30, 35

*Brown v. Five Star Quality Care, Inc.,*
  No. 2:15-cv-4105, 2016 U.S. Dist. LEXIS 187748,
  (D.S.C. Jan. 8, 2016) ................................................................... 34

*Burnett v. Nat'l Ass'n of Realtors,*
  No. 19-CV-00332-SRB, 2022 U.S. Dist. LEXIS 73682
  (W.D. Mo. Apr. 22, 2022) ............................................................... 42

*Carroll v. Leboeuf, Lamb, Greene & MacRae, L.L.P.,*
  374 F. Supp. 2d 375 (S.D.N.Y. 2005) ................................................ 37

*Cartagena Enters. v. J. Walter Thompson Co.,*
  2013 U.S. Dist. LEXIS 149597 (S.D.N.Y. Oct. 16, 2013) ................... 44

*Chaudhri v.*
  *StockX LLC (In re StockX Customer Data Sec. Breach Litig.),*
  19 F.4th 873 (6th Cir. 2021) ............................................................ 33

*Chen-Oster v. Goldman, Sachs & Co.,*
  449 F. Supp. 3d 216 (S.D.N.Y. 2020) ................................................ 24

*Contec Corp. v. Remote Sol. Co.,*
  398 F.3d 205 (2d Cir. 2005) ............................................................ 44

*Davidow v. H&R Block, Inc.,*
  No. 18-01022-CV-W-ODS, 2019 U.S. Dist. LEXIS 79874
  (W.D. Mo. May 13, 2019) .......................................................... 17, 42

*De Angelis v. Icon Entm't Grp., Inc.,*
  364 F. Supp. 3d 787 (S.D. Ohio 2019) ......................................... 29, 35

v

*Devlin v. Scardelletti,*
   536 U.S. 1 (2002)................................................................ 22

*Dickson v. Gospel for ASIA, Inc.,*
   902 F.3d 831 (8th Cir. 2018)............................................. 20

*Dominium Austin Partners, LLC v. Emerson,*
   248 F.3d 720 (8th Cir. 2001).......................................... 2, 36

*Driver v. BPV Mkt. Place Invr's, LLC.,*
   No. 4:17-cv-1607 CAS, 2018 U.S. Dist. LEXIS 114148,
   E.D. Mo. July 10, 2018) ..................................................... 34

*Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC,*
   756 F.3d 1098 (8th Cir. 2014)...................................... *passim*

*Fallo v. High-Tech Inst.,*
   559 F.3d 874 (8th Cir. 2009)................................ 30, 31, 32

*Fischer v. Conopco,*
   No. 4:21-cv-00582-SEP1, 2022 U.S. Dist. LEXIS 98584 (E.D. Mo.
   June 2, 2022) ....................................................................... 31

*Fogelsong v. Joe Machens Auto. Grp. Inc.,*
   600 S.W.3d 288 (Mo. Ct. App. 2020)............................... 32

*Forby v. One Techs., LP,*
   No. 3:16-CV-856-L, 2020 U.S. Dist. LEXIS 128913
   (N.D. Tex. July 22, 2020) .................................................. 23

*Green v. SuperShuttle Int'l, Inc.,*
   653 F.3d 766 (8th Cir. 2011)........................................ 30, 31

*Gutierrez v. Wells Fargo Bank, NA,*
   889 F.3d 1230 (11th Cir. 2018)................................. *passim*

*H&T Fair Hills, Ltd. v. All. Pipeline L.P.,*
   No. 19-cv-1095 (JNE/BRT), 2022 U.S. Dist. LEXIS 53326
   (D. Minn. Mar. 24, 2022), *appeal filed*, No. 22-1817 (8th Cir.)........... 23

*Henry Schein, Inc. v. Archer & White Sales, Inc.,*
   139 S. Ct. 524 (2019)...................................... 2, 29, 30, 35

Appellate Case: 22-2664   Page: 7   Date Filed: 10/19/2022 Entry ID: 5209248

*Henry v. Vantage Credit Union*, No. 4:20-cv-01865-SRC,
2021 U.S. Dist. LEXIS 101571 (E.D. Mo. May 28, 2021)................... 31

*In re A2p SMS Antitrust Litig.*,
972 F. Supp. 2d 465 (S.D.N.Y. 2013).................................... 40

*In re Apple & AT&T Antitrust Litig.*,
826 F. Supp. 2d 1168 (N.D. Cal. 2011) ................................. 40

*In re Ductile Iron Pipe Fittings Direct Purchaser Antitrust Litig.*,
No. 12-711, 2016 U.S. Dist. LEXIS 133206
(D.N.J. Sept. 28, 2016)................................................ 24

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
No. M 07-1827 SI, 2011 U.S. Dist. LEXIS 55033
(N.D. Cal. May 9, 2011) ............................................... 24

*In re Universal Serv. Fund Tel. Billing Practices Litig.*,
300 F. Supp. 2d 1107 (D. Kan. 2003) .............................. 40-41

*Interstate Cleaning Corp. v. Commercial Underwriters Ins. Co.*,
325 F.3d 1024 (8th Cir. 2003)......................................... 21

*Jackson v. Aliera Cos.*,
No. 19-cv-01281-BJR, 2020 U.S. Dist. LEXIS 149772
(W.D. Wash. Aug. 18, 2020)............................................ 23

*Jensen v. Cablevision Sys. Corp.*,
372 F. Supp. 3d 95 (E.D.N.Y. 2019) ................................... 24

*Jones v. Waffle House, Inc.*,
866 F.3d 1257 (11th Cir. 2017)........................................ 33

*KPH Healthcare Servs. v. Janssen Biotech, Inc.*,
No. 20-cv-05901 (KM) (ESK), 2021 U.S. Dist. LEXIS 196095
(D.N.J. Oct. 8, 2021) ................................................. 40

*McNabb v. Barrett*,
257 S.W.3d 166 (Mo. Ct. App. 2008)................................... 21

*MegaForce v. Eng*,
No. 18-cv-1691 (ECT/HB), 2019 U.S. Dist. LEXIS 16495
(D. Minn. Feb. 1, 2019) ............................................... 37

Appellate Case: 22-2664     Page: 8     Date Filed: 10/19/2022 Entry ID: 5209248

*Mitchell v. EEG, Inc.*,
No. 3:15CV-00903-JHM, 2016 U.S. Dist. LEXIS 65191
(W.D. Ky. May 17, 2016) ....................................................................... 34

*Molock v. Whole Foods Mkt. Grp.*,
952 F.3d 293 (D.C. Cir. 2020) ................................................... 2, 15, 22

*Morgan v. Ferrellgas, Inc.*,
8 F.4th 795 (8th Cir. 2021) .................................................. 2, 17, 36, 39

*Mumin v. Uber Techs., Inc.*,
239 F. Supp. 3d 507 (E.D.N.Y. 2017) ................................................... 34

*Physician Consortium Servs., LLC v. Molina Healthcare, Inc.*,
414 F. App'x 240 (11th Cir. 2011) ........................................... 44, 45, 46

*PRM Energy Sys. V. Primenergy, LLC*,
592 F.3d 830 (8th Cir. 2010) ................................................................ 40

*Pruteanu v. Team Select Home Care of Mo., Inc.*,
No. 4:18-CV-01640-AGF, 2019 U.S. Dist. LEXIS 220889
(E.D. Mo. Nov. 26, 2019) ............................................................... 40, 42

*Rent-A-Center, W., Inc. v. Jackson*,
561 U.S. 63 (2010) ............................................................. 2, 29, 33, 34

*Rushing v. Williams-Sonoma, Inc.*,
No. 16-cv-01421-WHO, 2020 U.S. Dist. LEXIS 188095
(N.D. Cal. Oct. 8, 2020) ........................................................................ 23

*Shen-Oster v. Goldman, Sachs & Co.*,
2021 U.S. Dist. LEXIS 175593 (S.D.N.Y. Sep. 15, 2021) .................... 25

*Sitzer v. Nat'l Ass'n of Realtors*,
12 F.4th 853 (8th Cir. 2021) ................................................... 13, 14, 21

*Smith v. Bayer Corp.*,
564 U.S. 299 (2011) .................................................................... 15, 22

*Smith/Enron Cogeneration Ltd. P'ship v.*
*Smith Cogeneration Int'l, Inc.*,
198 F.3d 88 (2d Cir. 1999) ................................................................... 36

Appellate Case: 22-2664     Page: 9     Date Filed: 10/19/2022 Entry ID: 5209248

*Soars v. Easter Seals Midwest*,
563 S.W.3d 111 (Mo. 2018) .................................................. 2, 17, 33, 34

*SRS Energy, Inc. v. Bio-Prods. Int'l, Inc.*,
No. 4:08CV285 HEA, 2008 U.S. Dist. LEXIS 41693
(E.D. Mo. May 27, 2008) ................................................................ 40, 43

*Sugar Creek Acquisition, LLC v. Ceria-Na,* LLC,
No. 4:22-cv-00294-AGF, 2022 U.S. Dist. LEXIS 115467
(E.D. Mo. June 30, 2022) ..................................................................... 36

*State* ex rel. *Hewitt v. Kerr*,
461 S.W.3d 798 (Mo. 2015) ...................................................... 17, 36, 37

*Triplet v. Menard, Inc.*,
42 F.4th 868 (8th Cir. 2022) ............................................................... 20

## Statutes

9 U.S.C. § 2 ............................................................................................ 19

9 U.S.C. § 3 ............................................................................................ 19

9 U.S.C. § 4 ............................................................................................ 19

9 U.S.C. § 16(a)(1) .................................................................................. 1

28 U.S.C. § 1331 ...................................................................................... 1

28 U.S.C. § 1337 ...................................................................................... 1

Appellate Case: 22-2664     Page: 10     Date Filed: 10/19/2022 Entry ID: 5209248

# JURISDICTIONAL STATEMENT

The District Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337. App. 965–66, R. Doc. 759 at 10–11.

This Court has subject-matter jurisdiction over this appeal pursuant to 9 U.S.C. § 16(a)(1).

The District Court entered the order that is the subject of this appeal on July 19, 2022 (the "Order"). App. 1146, R. Doc. 843. Appellants timely filed their notice of appeal of that Order on August 8, 2022. App. 1162, R. Doc. 877. Appellants' brief is timely filed. Eighth Circuit Clerk's Order, September 7, 2022, Doc. No. 5195486.

# STATEMENT OF THE ISSUES

I.    Did HomeServices waive its right to arbitrate against certain unnamed class members, where (A) it was jurisdictionally impossible to move to compel them to arbitrate until the class was certified, and (B) HomeServices moved to compel them to arbitrate immediately after the class was certified?

**Suggested Answer: No.**

***Most Apposite Cases***:
*Gutierrez v. Wells Fargo Bank, NA*,
889 F.3d 1230, 1238 (11th Cir. 2018)

1

*Molock v. Whole Foods Mkt. Grp.*,
952 F.3d 293, 297 (D.C. Cir. 2020)

II.    Should the arbitrator decide all other gateway issues, given

the two delegation clauses present in the arbitration agreements?

**Suggested Answer: Yes.**

***Most Apposite Cases***:
*Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 69–71 (2010)

*Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524,
531 (2019)

*Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*,
756 F.3d 1098, 1100 (8th Cir. 2014)

*Soars v. Easter Seals Midwest*, 563 S.W.3d 111, 113–14 (Mo. 2018)

III.   If the Court decides gateway issues, can HomeServices

enforce the arbitration agreements, where Plaintiffs have treated

HomeServices and its subsidiaries as a single unit?

**Suggested Answer: If reached, yes.**

***Most Apposite Cases***:
*Morgan v. Ferrellgas, Inc.*, 8 F.4th 795, 800 (8th Cir. 2021)

*Dominium Austin Partners, LLC v. Emerson*, 248 F.3d 720,
728 (8th Cir. 2001)

*State* ex rel. *Hewitt v. Kerr*, 461 S.W.3d 798, 814 (Mo. 2015).

2

# STATEMENT OF THE CASE

Plaintiffs are home sellers who allege that the commissions they paid to real estate brokers were too high. They agreed to pay those commissions in contracts called "listing agreements." All listing agreements for HomeServices' subsidiary companies in the Missouri area contained a binding arbitration clause. HomeServices[1] seeks to enforce these arbitration clauses in this appeal.

## *Factual Background*

## I.    Plaintiffs' Alleged Injury Arises From Listing Agreements.

Plaintiff home sellers allege that the real estate commissions they agreed to pay in their listing agreements were unlawfully inflated because of certain rules enacted by the National Association of Realtors:

> A seller broker's compensation is set forth in a listing agreement, a contract between the seller and the seller broker. The listing agreement includes the terms of the listing and often provides that the seller broker has the exclusive right to market the seller's home. Notably, due to the Adversary Commission Rule, the listing agreement specifies the total commission that a home seller will pay to the seller broker and also specifies the amount earmarked to

---

[1] In light of Fact Section III, *infra*, this brief will use "HomeServices" and "Appellants" interchangeably. "HomeServices" refers to all Appellants: HomeServices of America, Inc.; BHH Affiliates, LLC; and HSF Affiliates, LLC.

Appellate Case: 22-2664    Page: 13    Date Filed: 10/19/2022 Entry ID: 5209248

be paid to the buyer broker (in the event the buyer has a broker).

App. 163–64, R. Doc. 38, at 17–18. Further:

> Defendants' conspiracy has . . . inflated the total commissions paid by home sellers such as Plaintiffs and the other Class members.

App. 155, R. Doc. 38, at 9.

## II. HomeServices' Customers Agree to Arbitrate "Any Controversy or Claim" or "Any Dispute or Claim."

When class members agreed to list their homes for sale with a HomeServices subsidiary, they executed listing agreements. App. 346, R. Doc. 218-2, at 3; App. 807–08, R. Doc. 758-1, at 1–2; App. 471, R. Doc. 218-3, at 3; App. 917–18, R. Doc. 758-2, at 1–2.[2] These listing agreements set forth the commission to be paid by the seller[3]—the same

---

[2] HomeServices' subsidiaries instructed their affiliated real estate agents to present the form listing agreements to the customer, the home seller, for execution. App. 346, R. Doc. 218-2, at 3; App. 471, R. Doc. 218-3, at 3; App. 807–08, R. Doc. 758-1, at 1–2; App. 917–18, R. Doc. 758-2, at 1–2.

[3] *See* App. 350, R. Doc. 218-2, at 7; App. 357, R. Doc. 218-2, at 14; App. 364, R. Doc. 218-2, at 21; App. 371, R. Doc. 218-2, at 28; App. 378, R. Doc. 218-2, at 35; App. 385, R. Doc. 218-2, at 42; App. 392, R. Doc. 218-2, at 49; App. 399, R. Doc. 218-2, at 56; App. 407, R. Doc. 218-2, at 64; App. 416-17, R. Doc. 218-2, at 73-74; App. 430, R. Doc. 218-2, at 87; App. 438, R. Doc. 218-2, at 95; App. 446, R. Doc. 218-2, at 103; App. 454, R. Doc. 218-2, at 111; App. 811, R. Doc. 758-1, at 5; App. 819, R. Doc.

4

commission that constitutes Plaintiffs' chief complaint in this lawsuit. App. 958, R. Doc. 759, at 3; App. 974, R. Doc. 759, at 19.

The form listing agreements provided by HomeServices' subsidiaries to their affiliated real estate agents during the class period included broad, binding arbitration provisions. App. 346, R. Doc. 218-2, at 3; App. 808, R. Doc. 758-1, at 2; App. 471, R. Doc. 218-3, at 3; App. 918, R. Doc. 758-2, at 2. Each seller contracting with a HomeServices subsidiary agreed to arbitrate "[a]ny controversy or claim" or "[a]ny dispute or claim" between the parties to the listing agreement,

---

758-1, at 13; App. 827, R. Doc. 758-1, at 21; App. 835, R. Doc. 758-1, at 29; App. 843, R. Doc. 758-1, at 37; App. 851, R. Doc. 758-1, at 45; App. 859, R. Doc. 758-1, at 53; App. 867, R. Doc. 758-1, at 61; App. 875, R. Doc. 758-1, at 69; App. 883, R. Doc. 758-1, at 77; App. 891, R. Doc. 758-1, at 85; App. 900, R. Doc. 758-1, at 94; App. 909, R. Doc. 758-1, at 103; App. 475, R. Doc. 218-3, at 7; App. 482, R. Doc. 218-3, at 14; App. 489, R. Doc. 218-3, at 21; App. 496, R. Doc. 218-3, at 28; App. 503, R. Doc. 218-3, at 35; App. 511, R. Doc. 218-3, at 43; App. 519, R. Doc. 218-3, at 51; App. 527, R. Doc. 218-3, at 59; App. 534–35, R. Doc. 218-3, at 66–67; App. 541, R. Doc. 218-3, at 73; App. 549, R. Doc. 218-3, at 81; App. 557, R. Doc. 218-3, at 89; App. 921, R. Doc. 758-2, at 2; App. 930, R. Doc. 758-2, at 14; App. 939, R. Doc. 758-2, at 23; App. 948, R. Doc. 758-2, at 32.

5

including those relating to the agreement's "interpretation, enforcement or breach."[4] The listing agreements prohibit class arbitrations.[5]

---

[4] App. 354, R. Doc. 218-2, at 11; App. 361, R. Doc. 218-2, at 18; App. 368, R. Doc. 218-2, at 25; App. 376, R. Doc. 218-2, at 33; App. 382, R. Doc. 218-2, at 39; App. 390, R. Doc. 218-2, at 47; App. 397, R. Doc. 218-2, at 54; App. 404, R. Doc. 218-2, at 61; App. 412, R. Doc. 218-2, at 69; App. 425, R. Doc. 218-2, at 82; App. 435, R. Doc. 218-2, at 92; App. 443, R. Doc. 218-2, at 100; App. 451, R. Doc. 218-2, at 108; App. 459, R. Doc. 218-2, at 116; App. 816, R. Doc. 758-1, at 10; App. 824, R. Doc. 758-1, at 18; App. 832, R. Doc. 758-1, at 26; App. 840, R. Doc. 758-1, at 34; App. 848, R. Doc. 758-1, at 42; App. 855, R. Doc. 758-1, at 49; App. 863, R. Doc. 758-1, at 57; App. 871, R. Doc. 758-1, at 65; App. 880, R. Doc. 758-1, at 74; App. 888, R. Doc. 758-1, at 82; App. 896, R. Doc. 758-1, at 90; App. 805, R. Doc. 758-1, at 99; App. 914, R. Doc. 758-1, at 108; App. 479, R. Doc. 218-3, at 11; App. 486, R. Doc. 218-3, at 18; App. 494, R. Doc. 218-3, at 26; App. 501, R. Doc. 218-3, at 33; App. 508, R. Doc. 218-3, at 40; App. 515, R. Doc. 218-3, at 47; App. 523, R. Doc. 218-3, at 55; App. 531, R. Doc. 218-3, at 63; App. 538, R. Doc. 218-3, at 70; App. 546, R. Doc. 218-3, at 78; App. 554, R. Doc. 218-3, at 86; App. 562, R. Doc. 218-3, at 94; App. 926, R. Doc. 758-2, at 10; App. 935, R. Doc. 758-2, at 19; App. 944, R. Doc. 758-2, at 28; App. 953, R. Doc. 758-2, at 37.

[5] App. 354, R. Doc. 218-2, at 11; App. 361, R. Doc. 218-2, at 18; App. 368, R. Doc. 218-2, at 25; App. 376, R. Doc. 218-2, at 33; App. 382, R. Doc. 218-2, at 39; App. 390, R. Doc. 218-2, at 47; App. 397, R. Doc. 218-2, at 54; App. 404, R. Doc. 218-2, at 61; App. 412, R. Doc. 218-2, at 69; App. 426, R. Doc. 218-2, at 83; App. 435, R. Doc. 218-2, at 92; App. 443, R. Doc. 218-2, at 100; App. 451, R. Doc. 218-2, at 108; App. 459, R. Doc. 218-2, at 116; App. 816, R. Doc. 758-1, at 10; App. 824, R. Doc. 758-1, at 18; App. 832, R. Doc. 758-1, at 26; App. 840, R. Doc. 758-1, at 24; App. 848, R. Doc. 758-1, at 42; App. 855–56, R. Doc. 758-1, at 49–50; App. 863–64, R. Doc. 758-1, at 57–58; App. 871–72, R. Doc. 758-1, at 65–66; App. 880, R. Doc. 758-1, at 74; App. 888, R. Doc. 758-1, at 82; App. 896, R. Doc. 758-1, at 90; App. 905, R. Doc. 758-1, at 99; App. 914–15, R. Doc. 758-1, at 108–09; App. 479, R. Doc. 218-3, at 11; App. 486, R. Doc.

6

Many of the listing agreements further provide that such arbitration will be pursuant to and administered by the rules of the American Arbitration Association (AAA).[6] The AAA rules, in turn, give the arbitrator the "power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." AAA R-7(a).[7] All of the listing agreements delegate

---

218-3, at 18; App. 494, R. Doc. 218-3, at 26; App. 501, R. Doc. 218-3, at 33; App. 508, R. Doc. 218-3, at 40; App. 516, R. Doc. 218-3, at 48; App. 524, R. Doc. 218-3, at 56; App. 532, R. Doc. 218-3, at 64; App. 538, R. Doc. 218-3, at 70; App. 546, R. Doc. 218-3, at 78; App. 554, R. Doc. 218-3, at 86; App. 562, R. Doc. 218-3, at 94; App. 926–27, R. Doc. 758-2, at 10–11; App. 935–36, R. Doc. 758-2, at 19–20; App. 944–45, R. Doc. 758-2, at 28–29; App. 953–54, R. Doc. 758-2, at 37–38.

[6] App. 354, R. Doc. 218-2, at 11; App. 361, R. Doc. 218-2, at 18; App. 368, R. Doc. 218-2, at 25; App. 376, R. Doc. 218-2, at 33; App. 382, R. Doc. 218-2, at 39; App. 390, R. Doc. 218-2, at 47; App. 397, R. Doc. 218-2, at 54; App. 404, R. Doc. 218-2, at 61; App. 412, R. Doc. 218-2, at 69; App. 425, R. Doc. 218-2, at 82; App. 435, R. Doc. 218-2, at 92; App. 479, R. Doc. 218-3, at 11; App. 486, R. Doc. 218-3, at 18; App. 494, R. Doc. 218-3, at 26; App. 501, R. Doc. 218-3, at 33; App. 508, R. Doc. 218-3, at 40; App. 515, R. Doc. 218-3, at 47; App. 523, R. Doc. 218-3, at 55; App. 531, R. Doc. 218-3, at 63.

[7] *Commercial Arbitration Rules and Mediation Procedures*, at 13, American Arbitration Association, https://adr.org/sites/default/files/Commercial%20Rules.pdf; *Consumer Arbitration Rules*, at 17 R-14(a), American Arbitration Association, https://adr.org/sites/default/files/Consumer%20Rules.pdf.

questions pertaining to the "interpretation" and "enforcement" of the listing agreements to the arbitrator.[8]

From 2018 to the present, the listing agreements also contain an independent "Jury Trial and Class Action Waiver," which states: "Neither party may, in any court proceeding or dispute resolution process, bring any dispute as a representative or member of a class, or

---

[8] App. 354, R. Doc. 218-2, at 11; App. 361, R. Doc. 218-2, at 18; App. 368, R. Doc. 218-2, at 25; App. 376, R. Doc. 218-2, at 33; App. 382, R. Doc. 218-2, at 39; App. 390, R. Doc. 218-2, at 47; App. 397, R. Doc. 218-2, at 54; App. 404, R. Doc. 218-2, at 61; App. 412, R. Doc. 218-2, at 69; App. 425, R. Doc. 218-2, at 82; App. 435, R. Doc. 218-2, at 92; App. 479, R. Doc. 218-3, at 11; App. 486, R. Doc. 218-3, at 18; App. 494, R. Doc. 218-3, at 26; App. 501, R. Doc. 218-3, at 33; App. 508, R. Doc. 218-3, at 40; App. 515, R. Doc. 218-3, at 47; App. 523, R. Doc. 218-3, at 55; App. 531, R. Doc. 218-3, at 63; App. 443, R. Doc. 218-2, at 100; App. 451, R. Doc. 218-2, at 108; App. 459, R. Doc. 218-2, at 116; App. 816, R. Doc. 758-1, at 10; App. 824, R. Doc. 758-1, at 18; App. 832, R. Doc. 758-1, at 26; App. 840, R. Doc. 758-1, at 34; App. 848, R. Doc. 758-1, at 42; App. 855, R. Doc. 758-1, at 49; App. 863, R. Doc. 758-1, at 57; App. 871, R. Doc. 758-1, at 65; App. 880, R. Doc. 758-1, at 74; App. 888, R. Doc. 758-1, at 82; App. 896, R. Doc. 758-1, at 90; App. 905, R. Doc. 758-1, at 99; App. 914, R. Doc. 758-1, at 108; App. 538, R. Doc. 218-3, at 70; App. 546, R. Doc. 218-3, at 78; App. 554, R. Doc. 218-3, at 86; App. 562, R. Doc. 218-3, at 94; App. 926, R. Doc. 758-2, at 10; App. 935, R. Doc. 758-2, at 19; App. 944, R. Doc. 758-2, at 28; App. 953, R. Doc. 758-2, at 37.

Appellate Case: 22-2664     Page: 18     Date Filed: 10/19/2022 Entry ID: 5209248

to act in the interest of the general public or in any private attorney general capacity. All parties waive all rights to a jury trial."[9]

### *Procedural History*

### III. Plaintiffs Plead A Case Against "HomeServices," Which Includes HomeServices of America, Inc.'s Missouri Subsidiary Companies.

Plaintiffs brought this suit in 2019. The Complaint "use[s] the term 'HomeServices' to refer to Defendants HomeServices of America, Inc., HSF Affiliates, LLC, BHH Affiliates, LLC, The Long & Foster Companies, Inc., as well as the other entities referred to in this paragraph and their other wholly owned or controlled subsidiaries or affiliates." App. 971, R. Doc. 759, at 16.

---

[9] App. 435, R. Doc. 218-2, at 92; App. 443, R. Doc. 218-2, at 100; App. 451, R. Doc. 218-2, at 108; App. 459, R. Doc. 218-2, at 116; App. 816, R. Doc. 758-1, at 10; App. 824, R. Doc. 758-1, at 18; App. 832, R. Doc. 758-1, at 26; App. 840, R. Doc. 758-1, at 34; App. 848, R. Doc. 758-1, at 42; App. 856, R. Doc. 758-1, at 50; App. 864, R. Doc. 758-1, at 58; App. 872, R. Doc. 758-1, at 66; App. 880, R. Doc. 758-1, at 74; App. 888, R. Doc. 758-1, at 82; App. 896, R. Doc. 758-1, at 90; App. 905, R. Doc. 758-1, at 99; App. 914, R. Doc. 758-1, at 108; App. 532, R. Doc. 218-3, at 64; App. 538, R. Doc. 218-3, at 70; App. 546, R. Doc. 218-3, at 78; App. 554, R. Doc. 218-3, at 86; App. 562, R. Doc. 218-3, at 94; App. 927, R. Doc. 758-2, at 11; App. 936, R. Doc. 758-2, at 20; App. 945, R. Doc. 758-2, at 29; App. 954, R. Doc. 758-2, at 38.

Appellate Case: 22-2664    Page: 19    Date Filed: 10/19/2022 Entry ID: 5209248

The "other entities referred to in this paragraph" include "ReeceNichols Real Estate, [which] is by far the largest real estate brokerage in the Kansas City Metropolitan area, with nearly three times as many transactions as its next competitor, and is an affiliate of HomeServices, HSF Affiliates, and/or Berkshire Hathaway." App. 971, R. Doc. 759, at 16.

ReeceNichols Real Estate ("RN") and its sister company, BHH KC Real Estate, LLC ("BHHKC"), are both wholly-owned subsidiaries of HomeServices of America, Inc., owned through intermediate subsidiary HomeServices of MOKAN, LLC. App. 342, R. Doc. 218-1, at 3. Both RN and BHHKC provide real estate brokerage services in some of the area(s) at issue in this case. App. 342, R. Doc. 218-1, at 3; App. 345–46, R. Doc. 218-2, at 2–3; App. 471, R. Doc. 218-3, at 3.

RN and BHHKC were the brokerage entities with whom class members executed the listing agreements containing arbitration clauses.

## IV. HomeServices Alerts the Court and Plaintiffs to Arbitration Rights.

Since the inception of this litigation, HomeServices has consistently notified the Court and all parties of their binding

10

arbitration rights. This included statements in the motion to dismiss, App. 207, R. Doc. 79, at 8 n.1, the answer, App. 312, R. Doc. 172, at 79, and the subsequent answer, App. 1040, R. Doc. 781, at 30.

## V. HomeServices Makes Its First Motion to Compel Arbitration and the District Court Denies It.

In 2020, more than two years before class certification, HomeServices moved to compel the Burnett named plaintiffs to arbitration. App. 315, R. Doc. 217, *cf.* App. 738, R. Doc. 741. HomeServices included in that motion a request to strike the class allegations with respect to arbitrating unnamed putative class members. App. 315, R. Doc. 217, at 1. The district court denied the motion. App. 618, R. Doc. 239. HomeServices noticed its first appeal to this Court under Section 16 of the Federal Arbitration Act. App. 630, R. Doc. 241.

## VI. HomeServices Seeks a Stay of All Proceedings Against It Pending Adjudication of Its Arbitration Rights; Plaintiffs Oppose and the District Court Denies.

Upon noticing its first appeal, HomeServices moved to stay all proceedings against it pending appeal in order to "preserve a meaningful right to arbitration." App. 633, R. Doc. 244; *see* App. 643, R. Doc. 245, at 7.

11

Plaintiffs opposed. App. 649, R. Doc. 252. According to Plaintiffs:

> [HomeServices] is one of several named Defendants, who as co-conspirators are jointly and severally liable under the antitrust laws for their actions in furtherance of a conspiracy that has inflated the commissions paid by home sellers. Because [HomeServices] is jointly and severally liable as a co-conspirator, all Class members have valid antitrust claims against [HomeServices] even if they did not use [HomeServices] in the sale of their homes.

App. 650, R. Doc. 252, at 2.[10] In Plaintiffs' words, even if HomeServices won a right to arbitrate with *its own* customers, HomeServices would still need to "come right back to th[e] Court to face the non-arbitrable claims of the rest of the Class." App. 655, R. Doc. 252, at 7. By that time, argued Plaintiffs, "discovery and class certification would be well underway, if not[] complete." App. 655, R. Doc. 252, at 7.[11]

---

[10] The certified class includes not only customers of HomeServices, but also customers of other brokerage defendants Keller Williams Realty, Inc.; Realogy Holdings Corp.; and RE/MAX, LLC. App. 777, R. Doc. 741, at 40. Plaintiffs claim that the defendants conspired with one another, App. 1004, R. Doc. 759, at 49, and that each defendant is "jointly and severally liable for the acts of [its] co-conspirators." App. 974, R. Doc. 759, at 18.

[11] *See also, e.g.*, App. 1181, R. Doc. 902, at 4 ("The certified classes contain more than 494,000 members. Of these, at least 377,000 never signed any agreement with any affiliate of HomeServices . . . . Thus, the claims of these 377,000 class members will be tried in this Court regardless of the outcome of HomeServices' appeal. . . . All the issues and evidence at the February 21 trial—including the existence of the

Appellate Case: 22-2664     Page: 22     Date Filed: 10/19/2022 Entry ID: 5209248

The district court agreed with Plaintiffs. App. 670, R. Doc. 256. It determined that HomeServices must proceed with litigation of the "non-arbitrable class action proceedings against HomeServices Defendants," because "[a]ny plaintiffs and putative class members who did not sign the Listing Agreement were never subject to arbitration," and "any plaintiff or putative class member who did not sign a Listing Agreement would be able to litigate his or her claims in court." App. 675, R. Doc. 256, at 6.

## VII. This Court Affirms the District Court's Denial of HomeServices' First Motion to Compel Arbitration.

After oral argument, this Court affirmed the district court's decision denying the first motion to compel arbitration. *Sitzer v. Nat'l Ass'n of Realtors*, 12 F.4th 853 (8th Cir. 2021).[12] In its opinion, this

---

conspiracy, HomeServices' participation in the conspiracy, and the mechanisms of injury and damages—will be exactly the same no matter how many class members participate."); App. 1185, R. Doc. 902, at 8 ("[E]ven if HomeServices were to win its [arbitration] appeal, it would still have to face trial against these 377,400 class members."); App. 1186, R. Doc. 902, at 9 ("HomeServices will have to prepare for and fully litigate the February trial whether it wins its [arbitration] appeal or not."); App. 1191, R. Doc. 902, at 14 ("HomeServices can't avoid this trial.").

[12] Joshua Sitzer dropped out of this case in 2021. App. 677, R. Doc. 469, at 1. Scott and Rhonda Burnett are now the lead plaintiffs.

Court held that "HomeServices cannot compel the Burnetts to arbitrate a case that it has already litigated for nearly a year" under the principle of waiver. *Id.* at 857. This Court did not evaluate the district court's denial of the motion to strike the class allegations with respect to arbitrating unnamed putative class members. *Id.* at 855 n.2.

Although the district court had denied the motion to compel arbitration "mainly because HomeServices was not itself a party to the Burnetts' listing agreement," this Court did not reach that issue. *Id.* at 855.

## VIII. The Court Certifies the Class and HomeServices Immediately Moves to Compel Unnamed Class Members to Arbitrate.

On April 22, 2022, the district court certified the class. App. 738, R. Doc. 741. On May 5, 2022—nine business days later—HomeServices moved to compel the HomeServices-affiliated unnamed class members to arbitrate their claims. App. 779, R. Doc. 757. The district court denied the motion. App. 1146, R. Doc. 843. HomeServices timely noticed the instant appeal. App. 1162, R. Doc. 877.

Appellate Case: 22-2664     Page: 24     Date Filed: 10/19/2022 Entry ID: 5209248

## SUMMARY OF THE ARGUMENT

**No Waiver.** Putative class members "are *always* treated as nonparties." *Molock v. Whole Foods Mkt. Grp.*, 952 F.3d 293, 297 (D.C. Cir. 2020) (citing *Smith v. Bayer Corp.*, 564 U.S. 299, 302 (2011)). They "become parties to an action…only after class certification." *Id.* at 298.

Therefore, it is "jurisdictionally impossible for [a] District Court to rule" on a motion to compel unnamed class members to arbitration "before the class [is] certified." *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1238 (11th Cir. 2018). "[F]raming an effective motion to compel arbitration [is] impossible." *Id.* "[A]ny plaintiffs beyond those named in the complaint are speculative and beyond the reach of the Court's power" until the class-certification mechanism "concretely identifies the plaintiffs." *Id.* Thus, a defendant's "failure to seek arbitration with the unnamed class members prior to class certification" "cannot" "manifest[] inconsistency with its arbitration rights." *Id.*

Here, HomeServices filed its motion to compel nine business days after the class was certified. *Compare* App. 738, R. Doc. 741, *with* App. 779, R. Doc. 757. This was the moment when that motion to compel

15

arbitration became possible to grant. *Gutierrez*, 889 F.3d at 1238. There could not have been a waiver under these circumstances.

**Delegation of Gateway Issues.** The arbitration agreements contain two delegation clauses. First, many agreements incorporate the AAA Rules. The "incorporation of the AAA Rules into a contract requiring arbitration" is "a clear and unmistakable indication the parties intended for the arbitrator to decide threshold questions of arbitrability." *Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*, 756 F.3d 1098, 1100 (8th Cir. 2014). Every circuit court to address the issue agrees with this Court. *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 846 (6th Cir. 2020).

Second, all of the arbitration agreements state broadly that "[a]ny controversy or claim" or "[a]ny dispute or claim" between the parties, including claims related to the agreement's "interpretation, enforcement or breach" will be settled by binding arbitration. The Missouri Supreme Court has held that such language—giving the arbitrator authority to decide "any dispute relating to [] interpretation, applicability, enforceability or formation"—constitutes a "delegation clause" that is "clear in evincing a manifest intention to delegate

16

threshold questions of arbitrability to a neutral arbitrator." *Soars v. Easter Seals Midwest*, 563 S.W.3d 111, 113–14 (Mo. 2018).

Accordingly, all gateway questions of arbitrability should be decided by the arbitrator.

**Non-Signatory Enforcement.** Even if the Court decides the gateway question of non-signatory enforcement, the Court should find that HomeServices may enforce the arbitration agreements. "A signatory plaintiff cannot avoid arbitration when she 'treated signatory and non-signatory defendants as a "single unit."'" *Morgan v. Ferrellgas, Inc.*, 8 F.4th 795, 800 (8th Cir. 2021) (quoting *State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798, 814 (Mo. 2015)). In this case, Plaintiffs expressly treated HomeServices and its Missouri subsidiaries (which signed the arbitration agreements) as one "single unit" in the complaint and throughout the litigation. HomeServices may also enforce the agreements under principles of equitable estoppel, *Barton Enters. v. Cardinal Health*, No. 4:10 CV 324 DDN, 2010 U.S. Dist. LEXIS 52435, at *8 (E.D. Mo. May 27, 2010), and the close-relationship test. *Id.*; *see also Davidow v. H&R Block, Inc.*, No. 18-01022-CV-W-ODS, 2019 U.S. Dist. LEXIS 79874, at *15 (W.D. Mo. May 13, 2019).

Appellate Case: 22-2664   Page: 27   Date Filed: 10/19/2022 Entry ID: 5209248

## ARGUMENT

HomeServices faces potential liability from the claims of 377,000 class members who purchased their homes through one of HomeServices' codefendants: RE/MAX, Realogy, or Keller Williams. App. 1181, R. Doc. 902, at 4. HomeServices has no right to arbitrate with these 377,000 class members. Accordingly, HomeServices has defended itself vigorously against their claims in court, and it will continue to do so.

A separate group of 117,000 class members (*i.e.*, all customers of HomeServices' subsidiaries) agreed to arbitrate this dispute when they signed listing agreements with HomeServices' Missouri-area subsidiaries. App. 1181–82, R. Doc. 902, at 4–5; *see supra* Fact Section II. HomeServices has consistently notified the district court of its intention to move to compel these individuals to arbitration during the last two years. *See supra* Fact Section IV. HomeServices could not file such a motion until it was jurisdictionally possible for the district court to grant it. HomeServices immediately filed its motion to compel the arbitrating unnamed class members to arbitration once they became parties to the litigation upon class certification.

18

The district court held that HomeServices' defense of the 377,000 non-arbitrating claims against it waived HomeServices' arbitration rights. What was HomeServices to do? Plaintiffs admit that "[a]ll the issues and evidence at the February 21 [2023] trial—including the existence of the conspiracy, HomeServices' participation in the conspiracy, and the mechanisms of injury and damages—will be exactly the same no matter how many class members participate," and "HomeServices will have to prepare for and fully litigate the February trial whether it wins its [arbitration] appeal or not." App. 1181, R. Doc. 902, at 4; App. 1186, R. Doc. 902, at 9.

HomeServices could not fail to defend against claims by 377,000 non-arbitrating individuals. It had no ability to move to compel the 117,000 arbitrating individuals to arbitration until the class was certified.

Because HomeServices moved to compel arbitration of the arbitrating class members' claims at the first opportunity, this panel should reverse the decision below and order arbitration to proceed pursuant to 9 U.S.C. §§ 2, 3, and 4.

19

## I. Standard of Review

The Court reviews "the denial of a motion to compel arbitration *de novo*," including the district court's "interpretation of a contract." *Triplet v. Menard, Inc.*, 42 F.4th 868, 870 (8th Cir. 2022).

The Federal Arbitration Act "promotes a liberal federal policy favoring arbitration agreements, and questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Id.* (quotation marks and citation omitted). This Court "liberally construe[s] arbitration agreements by resolving any doubts in favor of arbitration unless [it] can say with positive assurance that the arbitration clause cannot be construed to encompass the dispute." *Dickson v. Gospel for ASIA, Inc.*, 902 F.3d 831, 835 (8th Cir. 2018) (quotation marks and citation omitted).

Appellate Case: 22-2664   Page: 30   Date Filed: 10/19/2022 Entry ID: 5209248

## II. HomeServices Did Not Waive Its Right to Arbitrate Against Unnamed Class Members.[13]

"To safeguard its right to arbitration, a party must do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration." *ABF Freight Sys. v. Int'l Bhd. of Teamsters*, 728 F.3d 853, 862 (8th Cir. 2013) (citation omitted). A party asserting waiver of a contract right faces a high burden. For a party to waive a contract right through conduct, "the conduct must be so manifestly consistent with and indicative of an intention to renounce a particular right or benefit that no other reasonable explanation of the conduct is possible." *McNabb v. Barrett*, 257 S.W.3d 166, 170 (Mo. Ct. App. 2008) (internal quotation marks omitted). A finding of waiver is disfavored. *Interstate Cleaning Corp. v. Commercial Underwriters Ins. Co.*, 325 F.3d 1024, 1029–30 (8th Cir. 2003).

---

[13] HomeServices originally argued that waiver should be decided by the arbitrator. *See generally Sitzer*, 12 F.4th at 855. However, this Court determined in the prior appeal that this Court will decide questions of litigation-conduct waiver. *Id.* at 856.

Putative class members "are *always* treated as nonparties." *Molock v. Whole Foods Mkt. Grp.*, 952 F.3d 293, 297 (D.C. Cir. 2020) (citing *Smith v. Bayer Corp.*, 564 U.S. 299, 302 (2011)). They "become parties to an action…only after class certification." *Id.* at 298; *see also Devlin v. Scardelletti*, 536 U.S. 1, 16 n.1 (2002) (Scalia, J., dissenting) ("Not even petitioner, however, is willing to advance the novel and surely erroneous argument that a nonnamed class member is a party to the class-action litigation *before the class is certified*.").

Therefore, it is "jurisdictionally impossible for [a] District Court to rule" on a motion to compel unnamed class members to arbitration "before the class [is] certified." *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1238 (11th Cir. 2018). "[F]raming an effective motion to compel arbitration [is] impossible." *Id.* "[A]ny plaintiffs beyond those named in the complaint are speculative and beyond the reach of the Court's power" until the class-certification mechanism "concretely identifies the plaintiffs." *Id.* Thus, a defendant's "failure to seek arbitration with the unnamed class members prior to class certification" "cannot" "manifest[] inconsistency with its arbitration rights." *Id.*

22

Courts across the country agree with the Eleventh Circuit on this point. *See, e.g.*, *H&T Fair Hills, Ltd. v. All. Pipeline L.P.*, No. 19-cv-1095 (JNE/BRT), 2022 U.S. Dist. LEXIS 53326, at *25–26 (D. Minn. Mar. 24, 2022), *appeal filed*, No. 22-1817 (8th Cir.) (collecting cases) ("By moving to exercise its arbitration rights just fifteen days after class certification, Alliance did all it could reasonably have been expected to do to raise its right to arbitration at the earliest feasible time." (alteration adopted, internal quotation marks omitted)); *see also, e.g.*, *Rushing v. Williams-Sonoma, Inc.*, No. 16-cv-01421-WHO, 2020 U.S. Dist. LEXIS 188095, at *8 (N.D. Cal. Oct. 8, 2020) ("[The defendant] could not move to arbitrate claims against… unnamed class members before class certification."); *Jackson v. Aliera Cos.*, No. 19-cv-01281-BJR, 2020 U.S. Dist. LEXIS 149772, at *12 (W.D. Wash. Aug. 18, 2020) ("[A] party cannot move to compel putative class members to arbitration prior to class certification because putative class members are not parties to the action."); *Forby v. One Techs., LP*, No. 3:16-CV-856-L, 2020 U.S. Dist. LEXIS 128913, at *25 (N.D. Tex. July 22, 2020) ("[N]or can the court make such determination [to compel absent class members to arbitrate] prior to class certification, as the class members

23

are not yet parties to the litigation."); *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 234 (S.D.N.Y. 2020) ("In the context of class action litigation, courts repeatedly have held that the earliest time to move to compel arbitration is after class certification. At that juncture, previously putative class members first become subject to a court's jurisdiction."); *Jensen v. Cablevision Sys. Corp.*, 372 F. Supp. 3d 95, 123 (E.D.N.Y. 2019) ("This [c]ourt will not compel absent putative class members who are not before this [c]ourt to binding arbitration or issue a ruling regarding the enforceability of the provision. Any such ruling is procedurally improper and analogous to an advisory opinion."); *In re Ductile Iron Pipe Fittings Direct Purchaser Antitrust Litig.*, No. 12-711, 2016 U.S. Dist. LEXIS 133206, at *8 (D.N.J. Sept. 28, 2016) ("The issue [of compelling absent class members to arbitrate] should be addressed when all parties to the lawsuit are known and the specific arbitration agreements that [the] [d]efendant wishes to enforce can be identified. It is not appropriate for the [c]ourt to exclude potential class members from this class action and deprive those individuals of their day in court prior to their being made a party in this case."); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2011 U.S. Dist. LEXIS 55033,

24

at *28–29 (N.D. Cal. May 9, 2011) ("It does not appear to the [c]ourt that defendants could have moved to compel arbitration against such entities prior to the certification of a class in this case because, as defendants point out, 'putative class members are not parties to an action prior to class certification.'" (citation omitted)).

In this case, HomeServices filed its motion to compel immediately upon unnamed class members' presence in the district court (*i.e.*, upon class certification). *Compare* App. 738, R. Doc. 741, *with* App. 779, R. Doc. 757. This was the moment when that motion to compel arbitration became possible to grant. *Gutierrez*, 889 F.3d at 1238. A waiver-based requirement to file such a motion earlier makes no sense—it is neither reasonable nor feasible to require HomeServices to file a jurisdictionally-impossible motion. *Cf. ABF Freight*, 728 F.3d at 862; *McNabb*, 257 S.W.3d at 170 ("[T]he conduct must be so manifestly consistent with and indicative of an intention to renounce a particular right or benefit that no other reasonable explanation of the conduct is possible.").[14]

---

[14] *See also, e.g.*, *Shen-Oster v. Goldman, Sachs & Co.*, 2021 U.S. Dist. LEXIS 175593, at *8-9 (S.D.N.Y. Sep. 15, 2021).

25

Even though it would have been jurisdictionally impossible to grant a motion to compel absent class members to arbitrate before class certification, the district court found that HomeServices waived its arbitration rights as to the unnamed class members (1) by not filing a motion to compel the unnamed class members to arbitrate at some point before class certification, and (2) by participating in the litigation of the case before class certification. App. 1151–54, R. Doc. 843 at 6–9.

HomeServices previously tried to address these concerns, and the district court nevertheless ordered HomeServices to participate in the litigation of this case. Upon noticing its first appeal, HomeServices moved to stay all proceedings against it pending appeal in order to "preserve a meaningful right to arbitration." App. 633, R. Doc. 244; *see* App. 643, R. Doc. 245, at 7. The district court determined that HomeServices must proceed with litigation of the "non-arbitrable class action proceedings against HomeServices Defendants," because "[a]ny plaintiffs and putative class members who did not sign the Listing Agreement were never subject to arbitration," and "any plaintiff or putative class member who did not sign a Listing Agreement would be able to litigate his or her claims in court." App. 675, R. Doc. 256, at 6.

Appellate Case: 22-2664    Page: 36    Date Filed: 10/19/2022 Entry ID: 5209248

Plaintiffs agree that HomeServices has faced at all times potential joint-and-several liability for the actions of its alleged co-conspirators, who are co-defendants in this litigation. App. 650, R. Doc. 252, at 2 ("[A]ll Class members have valid antitrust claims against [HomeServices] even if they did not use [HomeServices] in the sale of their homes."). By Plaintiffs' own admissions, this potential liability stands separate and apart from any arbitration right asserted by HomeServices. App. 1181, R. Doc. 902, at 4 ("The certified classes contain more than 494,000 members. Of these, at least 377,000 never signed any agreement with any affiliate of HomeServices . . . . Thus, the claims of these 377,000 class members will be tried in this Court regardless of the outcome of HomeServices' appeal. . . . All the issues and evidence at the February 21 trial—including the existence of the conspiracy, HomeServices' participation in the conspiracy, and the mechanisms of injury and damages—will be exactly the same no matter how many class members participate."); App. 1185, R. Doc. 902, at 8 ("[E]ven if HomeServices were to win its [arbitration] appeal, it would still have to face trial against these 377,400 class members."); App. 1186, R. Doc. 902, at 9 ("HomeServices will have to prepare for and fully

27

litigate the February trial whether it wins its [arbitration] appeal or not."); App. 1191, R. Doc. 902, at 14 ("HomeServices can't avoid this trial.").

HomeServices could not refuse to participate in the defense of this matter and wait for its motion to arbitrate to become jurisdictionally possible—*i.e.*, until class certification—to defend itself. In Plaintiffs' words, even if HomeServices won a right to arbitrate with its own customers, HomeServices would still need to "come right back to th[e] Court to face the claims of the rest of the Class." App. 655, R. Doc. 252, at 7. By that time, "discovery and class certification would be well underway, if not[] complete." App. 655, R. Doc. 252, at 7.

In short, HomeServices faced a separate source of potential liability from the first day of this proceeding, against which HomeServices was logically and ethically required to defend. This potential liability was not and could not have been impacted by the arbitration agreements.

HomeServices defended itself at all times against these unnamed non-arbitrating class members, and it immediately moved to compel the

Appellate Case: 22-2664    Page: 38    Date Filed: 10/19/2022 Entry ID: 5209248

unnamed arbitrating class members to arbitration as soon as it was jurisdictionally possible to do so. There was no waiver.

## III. The Arbitrator Should Decide All Other Gateway Issues.

An "agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 69–71 (2010) (noting that each arbitration provision is severable). When "the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 531 (2019). Where a valid arbitration agreement exists, and when that agreement "delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Id.* at 530–31 (rejecting "wholly groundless" exception).[15]

---

[15] *See also, e.g.*, *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 851–52 (6th Cir. 2020) (noting that the Supreme Court has rejected a court's examination of the underlying merits of a motion to compel arbitration); *De Angelis v. Icon Entm't Grp., Inc.*, 364 F. Supp. 3d 787, 796 (S.D. Ohio 2019) ("[T]o adjudicate whether Ms. De Angelis

A. The Arbitration Agreements Contain Two Independently-Sufficient Delegation Clauses.

1. *Incorporation of the AAA Rules.*

The "incorporation of the AAA Rules into a contract requiring arbitration" is "a clear and unmistakable indication the parties intended for the arbitrator to decide threshold questions of arbitrability." *Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*, 756 F.3d 1098, 1100 (8th Cir. 2014); *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769 (8th Cir. 2011) ("By incorporating the AAA Rules, the parties agreed to allow the arbitrator to determine threshold questions of arbitrability."); *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009) ("Most of our sister circuits that have considered this issue agree with our conclusion that an arbitration provision's incorporation of the AAA Rules…is a clear and unmistakable expression of the parties' intent to reserve the question of arbitrability for the arbitrator and not the court."). Every circuit court to address the issue agrees with this Court. *Domino's Pizza*, 962 F.3d at 846 ("[E]very one of

_____

is bound to arbitration with parties that she alleges are nonsignatories would be to engage in the type of analysis that the Supreme Court held impermissible in *Henry Schein, Inc. v. Archer & White Sales, Inc.*").

30

our sister circuits to address the question—eleven out of twelve by our count—has found that the incorporation of the AAA Rules…provides 'clear and unmistakable' evidence that the parties agreed to arbitrate 'arbitrability.'").[16]

Here, many of the listing agreements incorporate the AAA Rules. *See supra* note 6. This constitutes an express delegation of gateway questions to the arbitrator. *Eckert/Wordell Architects*, 756 F.3d at 1100; *Green*, 653 F.3d at 769; *Fallo*, 559 F.3d at 878.

That the agreements refer generally to the AAA Rules rather than to any particular set of AAA Rules is immaterial. There are only two sets of AAA Rules that could conceivably apply to the disputes at issue in this case—the Commercial Arbitration Rules or the Consumer Arbitration Rules. Both sets of Rules contain identical language expressly stating that threshold issues of arbitrability will be decided by the arbitrator. *See* Commercial R-7(a) ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections

---

[16] *See also, e.g.*, *Fischer v. Conopco*, No. 4:21-cv-00582-SEP1, 2022 U.S. Dist. LEXIS 98584, at *2–4 (E.D. Mo. June 2, 2022); *Henry v. Vantage Credit Union*, No. 4:20-cv-01865-SRC, 2021 U.S. Dist. LEXIS 101571, at *18-19 (E.D. Mo. May 28, 2021).

Appellate Case: 22-2664   Page: 41   Date Filed: 10/19/2022 Entry ID: 5209248

with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."); Consumer R.14(a) ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.").[17] Thus, both sets of Rules contain the language relied on by this Court to conclude that threshold issues of arbitrability are for the arbitrator, not the Court. *See Fallo*, 559 F.3d at 878 (Rule 7(a) of the AAA Commercial Rules provides clear evidence of the parties' intent to leave question of arbitrability to the arbitrator); *see also Fogelsong v. Joe Machens Auto. Grp. Inc.*, 600 S.W.3d 288, 297 (Mo. Ct. App. 2020) (rejecting argument that agreement's failure to specify which AAA rules applied prevented delegation of gateway issues of arbitrability).

The arbitrator, not the Court, should determine all gateway issues.

---

[17] *See citations supra* note 7.

Appellate Case: 22-2664     Page: 42     Date Filed: 10/19/2022 Entry ID: 5209248

*2. Delegation of Issues of Interpretation and Enforcement.*

Separate and apart from the incorporation of the AAA Rules, all of the listing agreements state broadly that "[a]ny controversy or claim" or "[a]ny dispute or claim" between the parties, including claims related to the agreement's "interpretation, enforcement or breach" will be settled by binding arbitration. *See supra* note 4, 8. The Missouri Supreme Court has held that such language—giving the arbitrator authority to decide "any dispute relating to [] interpretation, applicability, enforceability or formation"—constitutes a "delegation clause" that is "clear in evincing a manifest intention to delegate threshold questions of arbitrability to a neutral arbitrator." *Soars v. Easter Seals Midwest*, 563 S.W.3d 111, 113–14 (Mo. 2018).

Federal courts, including the United States Supreme Court, agree and consistently read such phrases to indicate a delegation of gateway disputes of arbitrability to the arbitrator. *See Rent-A-Center,* 561 U.S. at 68, 71 (2010) ("enforceability"); *Chaudhri v. StockX LLC (In re StockX Customer Data Sec. Breach Litig.),* 19 F.4th 873, 878 (6th Cir. 2021) ("interpretation, applicability, enforceability or formation"); *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1262 (11th Cir. 2017)

33

("interpretation, applicability, enforceability or formation"); *Driver v. BPV Mkt. Place Invr's, LLC.*, No. 4:17-cv-1607 CAS, 2018 U.S. Dist. LEXIS 114148, at *4–5, *14–15 (E.D. Mo. July 10, 2018) ("interpretation, applicability, enforceability, or formation"); *Mitchell v. EEG, Inc.*, No. 3:15CV-00903-JHM, 2016 U.S. Dist. LEXIS 65191, at *6 (W.D. Ky. May 17, 2016) ("interpretation, enforceability, performance, breach, termination, or validity"); *Brown v. Five Star Quality Care, Inc.*, No. 2:15-cv-4105, 2016 U.S. Dist. LEXIS 187748, at *9, *12–13 (D.S.C. Jan. 8, 2016) ("enforcement" and "interpretation and enforceability"); *Mumin v. Uber Techs., Inc.*, 239 F. Supp. 3d 507, 522–23 (E.D.N.Y. 2017) ("enforceability, revocability or validity").

The independently-sufficient delegation clause contained in the listing agreements here—delegating issues of "interpretation" and "enforcement" to the arbitrator—direct that the arbitrator, not the Court, should decide all gateway issues. *Soars*, 563 S.W.3d at 114; *see also Rent-A-Center*, 561 U.S. at 68–69, 71.

<center>* * *</center>

Appellate Case: 22-2664    Page: 44    Date Filed: 10/19/2022 Entry ID: 5209248

Because the arbitration agreements at bar delegate gateway questions to the arbitrator, this Court should reverse and permit the arbitrator to decide gateway questions.

## IV. If This Court Entertains Gateway Questions, It Should Find That HomeServices May Compel Arbitration Here.

The Court should not decide gateway questions for the reasons described above. They have been delegated to the arbitrator. *See, e.g.*, *Eckert/Wordell*, 756 F.3d at 1100 (gateway question of non-signatory enforcement delegated to arbitrator under AAA Rules); *accord Domino's Pizza*, 962 F.3d at 852 ("[T]he arbitrator should decide for itself whether Domino's can enforce the arbitration agreement."); *De Angelis*, 364 F. Supp. 3d at 796 ("[T]o adjudicate whether Ms. De Angelis is bound to arbitration with parties that she alleges are nonsignatories would be to engage in the type of analysis that the Supreme Court held impermissible in *Henry Schein, Inc. v. Archer & White Sales, Inc.*").

If the Court nevertheless entertains the gateway question raised below—whether HomeServices may enforce the arbitration agreements— the Court should find that HomeServices may enforce them.

35

A. HomeServices May Enforce the Arbitration Agreements.

1. *Single-Unit Estoppel.*

The law of this Circuit is clear: "A signatory plaintiff cannot avoid arbitration when she 'treated signatory and non-signatory defendants as a "single unit."'" *Morgan v. Ferrellgas, Inc.*, 8 F.4th 795, 800 (8th Cir. 2021) (quoting *State* ex rel. *Hewitt v. Kerr*, 461 S.W.3d 798, 814 (Mo. 2015)); *see also Dominium Austin Partners, LLC v. Emerson*, 248 F.3d 720, 728 (8th Cir. 2001) ("[A]ppellants made allegations which treat all these parties as though they were signatories to the agreements…. It would be inequitable to allow appellants to claim that these parties are liable for failure to perform under a contract and at the same time to deny that they are contractual parties in order to avoid enforcement of the arbitration clause.").[18]

---

[18] *See also, e.g., Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 98 (2d Cir. 1999) ("[B]y treating the Enron entities as a single unit in its complaint in the Dominican Lawsuit, SCI is estopped from claiming that the current signatories to the 1994 Agreement are distinct from the defendants in the Dominican Lawsuit. Therefore, we conclude that SCI cannot now shield itself from arbitration…."); *Sugar Creek Acquisition, LLC v. Ceria-Na,* LLC, No. 4:22-cv-00294-AGF, 2022 U.S. Dist. LEXIS 115467, at *6 (E.D. Mo. June 30, 2022) ("Plaintiff is a signatory to the arbitration agreement, and when a signatory treats the defendants jointly in its pleadings as Plaintiff does here, the claim 'is a single one that should be referred in

36

In this case, Plaintiffs expressly treated HomeServices and its Missouri subsidiaries as one "single unit" in the complaint. In introducing HomeServices, Plaintiffs wrote:

> 44. Defendant HomeServices of America, Inc. ("HomeServices") is one of the nation's largest real estate brokerages…. HomeServices is a majority owner of Defendant HSF Affiliates, LLC ("HSF Affiliates"). **HSF Affiliates operates many real estate franchise networks, including ReeceNichols Real Estate**…. ReeceNichols Real Estate, for example, is by far the largest real estate brokerage in the Kansas City Metropolitan area, with nearly three times as many transactions as its next competitor, and is an affiliate of HomeServices, HSF Affiliates, and/or Berkshire Hathaway…. **This Complaint will use the term "HomeServices" to refer to Defendants HomeServices of America, Inc.**, HSF Affiliates, LLC, BHH Affiliates, LLC, The Long & Foster Companies, Inc., **as well as the other entities referred to in this paragraph and their other wholly owned or controlled subsidiaries** or affiliates.

---

its entirety to arbitration.'" (citation omitted)); *MegaForce v. Eng*, No. 18-cv-1691 (ECT/HB), 2019 U.S. Dist. LEXIS 16495, at \*10–12 (D. Minn. Feb. 1, 2019) (requiring signatory plaintiff to arbitrate with non-signatory defendant where plaintiff grouped signatory and non-signatory defendants "as operating as a single unit in the course of committing the wrongs alleged in the Complaint, only rarely distinguishing among them"); *Carroll v. Leboeuf, Lamb, Greene & MacRae, L.L.P.*, 374 F. Supp. 2d 375, 378 (S.D.N.Y. 2005) ("[T]he amended complaint lumps [signatory and non-signatory defendants] together under the sobriquet 'Promoters' and treats them throughout as a unit. . . . plaintiffs' attempt to avoid arbitration by pointing to their distinctness is unpersuasive."); *State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798, 814 (Mo. 2015).

Appellate Case: 22-2664    Page: 47    Date Filed: 10/19/2022 Entry ID: 5209248

App. 160–161, R. Doc. 38 at 14–15; App. 699–700, R. Doc. 477 at 15–16 (emphasis added). Plaintiffs then accused "HomeServices"—which, as a defined term, included ReeceNichols and other Missouri HomeServices subsidiaries—of a conspiracy to violate the antitrust laws. *See, e.g.*, App. 711, R. Doc. 477 at 27 ("The Corporate Defendants — HomeServices, Keller Williams, Realogy, and RE/MAX — have agreed to adopt, promote, implement, and enforce the Adversary Commission Rule through their active and direct involvement in NAR governance…."). Plaintiffs also included further direct allegations against ReeceNichols-branded companies, alleging that such companies have "representatives" on MLS Boards of Directors. *See, e.g.*, App. 713–14, R. Doc. 477 at 29–30.

Plaintiffs' "single unit" litigation strategy continued well past their complaint. Plaintiffs continuously collapsed any distinction between (A) HomeServices of America, Inc., BHH Affiliates, LLC, and HSF Affiliates, LLC on the one hand and (B) the various HomeServices operating subsidiaries on the other. For example, in their class certification briefing, Plaintiffs asserted that HomeServices is

vicariously liable for the actions taken by its subsidiaries and franchisees as part of the alleged conspiracy. R. Doc. 637 at ECF p. 36.[19]

Under the law of this Circuit, Plaintiffs' singular treatment of non-signatory HomeServices and its signatory subsidiaries means that Appellants may enforce the arbitration agreements here. *Morgan*, 8 F.4th at 800. Therefore, even if this Court reaches this question, the Court should reverse the decision below and order arbitration to proceed.

### 2. *Equitable or Alternative Estoppel.*

"Under alternative estoppel, a non-signatory can enforce an arbitration clause against a signatory when the signatory's claims are

---

[19] *See also* R. Doc. 459 at ECF p. 11 (alleging that "each Corporate Defendant facilitated, enforced, and perpetuated the Challenged Restraints vis-à-vis the Class Representatives" and naming ReeceNichols as the Corporate Defendant involved in the Burnetts' transaction); *see also, e.g.*, R. Doc. 554-4 at ECF pp. 32–34, ¶¶ 68, 70 (Plaintiffs' expert using agents affiliated with ReeceNichols and BHHKC to argue that HomeServices and the other Corporate Defendants have market power); App. 983–86, R. Doc. 759 at 28–31, ¶¶ 74, 79-82, 84 (using ReeceNichols and BHHKC to argue that HomeServices is actively involved in NAR and the local Realtor associations); App. 984, R. Doc. 759 at 29 ¶ 77 & R. Doc. 459 at ECF pp. 31–32 (alleging that HomeServices participates in the alleged conspiracy by forcing ReeceNichols and BHHKC to require their agents to follow the NAR Code of Ethics).

so closely intertwined with the agreement containing the arbitration clause 'that it would be unfair to allow the signatory to rely on the agreement in formulating its claims,' yet disavow the part of the agreement containing the arbitration clause." *Barton Enters. v. Cardinal Health*, No. 4:10 CV 324 DDN, 2010 U.S. Dist. LEXIS 52435, at *8 (E.D. Mo. May 27, 2010) (quoting *PRM Energy Sys. V. Primenergy, LLC*, 592 F.3d 830, 835 (8th Cir. 2010)); *Pruteanu v. Team Select Home Care of Mo., Inc.*, No. 4:18-CV-01640-AGF, 2019 U.S. Dist. LEXIS 220889, at *13–14, n.3 (E.D. Mo. Nov. 26, 2019) ("Missouri courts have applied the principles of alternative equitable estoppel set forth by the Eighth Circuit."); *SRS Energy, Inc. v. Bio-Prods. Int'l, Inc.*, No. 4:08CV285 HEA, 2008 U.S. Dist. LEXIS 41693, at *13–15 (E.D. Mo. May 27, 2008). Courts across the country regularly find circumstances such as those in this case that warrant the application of equitable estoppel in antitrust cases. *See, e.g.*, *KPH Healthcare Servs. v. Janssen Biotech, Inc.*, No. 20-cv-05901 (KM) (ESK), 2021 U.S. Dist. LEXIS 196095, at *21–24 (D.N.J. Oct. 8, 2021); *In re A2p SMS Antitrust Litig.*, 972 F. Supp. 2d 465, 478-80 (S.D.N.Y. 2013); *In re Apple & AT&T Antitrust Litig.*, 826 F. Supp. 2d 1168, 1176–78 (N.D. Cal. 2011); *In re*

40

*Universal Serv. Fund Tel. Billing Practices Litig.*, 300 F. Supp. 2d 1107, 1138–40 (D. Kan. 2003).

In this case, the complaint's allegations expressly arise from the commissions established in the listing agreements,[20] the same agreements containing the binding arbitration clauses at issue here. *See, e.g.*, App. 163, R. Doc. 38, at 17 ("A seller broker's compensation is set forth in a listing agreement, a contract between the seller and the seller broker. The listing agreement includes the terms of the listing…."); App. 155, R. Doc. 38, at 9 ("Defendants' conspiracy has . . . inflated the total commission paid by home sellers such as Plaintiffs and the other Class members."). The Court's Order on class certification stated:

> Plaintiffs allege that Defendant National Association of Realtors ("NAR"), created and implemented anticompetitive rules which require home sellers to pay commission to the broker representing the home buyer. . . . The seller broker's compensation rate is set forth in a listing agreement, a contract between the home seller and broker. This listing agreement typically states that a portion of the seller's commission will be paid to the buyer broker representing the home buyer who purchases the property.

---

[20] The listing agreements set forth the commission to be paid by the seller, *see supra* note 3, and they also contain the arbitration clauses at issue here. *See supra* note 4.

41

*Burnett v. Nat'l Ass'n of Realtors*, No. 19-CV-00332-SRB, 2022 U.S.
Dist. LEXIS 73682, at *4–6 (W.D. Mo. Apr. 22, 2022).

Plaintiffs' chief complaint here is that home sellers paid a
"commission to the broker representing the home buyer." *Id.* That
commission was set in listing agreements. *Id.* For the customers of a
HomeServices subsidiary, those listing agreements contained the
arbitration clauses at issue here. Accordingly, pursuant to the doctrine
of equitable estoppel, HomeServices may enforce the arbitration
clauses.

### 3. *Close-Relationship Estoppel.*

A "non-signatory [can] compel arbitration when the relationship
between the non-signatory and signatory is so close, that failing to do so
would eviscerate the arbitration agreement." *Barton Enters*, 2010 U.S.
Dist. LEXIS 52435, at *8. A "parent-subsidiary relationship is the type
of 'close relationship'" contemplated by this test to qualify for non-
signatory enforcement of an arbitration clause. *Id.* at *9; *see also*
*Davidow v. H&R Block, Inc.*, No. 18-01022-CV-W-ODS, 2019 U.S. Dist.
LEXIS 79874, at *15 (W.D. Mo. May 13, 2019) ("The 'close relationship'
includes the parent-subsidiary . . . ."); *Pruteanu*, 2019 U.S. Dist. LEXIS

220889, at *13–15, n.3; *SRS Energy*, 2008 U.S. Dist. LEXIS 41693, at *13–14.

Here, HomeServices of America is the ultimate parent company of both ReeceNichols and BHH KC, the listing agreements' signatories. App. 342, R. Doc. 218-1 at 3 ¶¶ 4–6. Because this is the type of relationship that qualifies under the "close relationship" test, HomeServices may enforce the arbitration agreements. It is only through the actions of its subsidiary and franchisee brokers that Plaintiffs seek to attach liability to HomeServices.

## B.     The Word "Parties" Does Not Change This Result.

The district court and Plaintiffs below focused on the word "parties" in the arbitration agreements in assessing whether HomeServices may enforce the arbitration agreements. The word "parties" does not change (A) the fact that the non-signatory enforcement question must be decided by the arbitrator, or (B) the fact that HomeServices may enforce the arbitration agreements in any event.

"[E]ven where an arbitration clause is limited to disputes 'between the parties,' a non-signatory may be able to compel arbitration of

43

arbitrability issues." *Cartagena Enters. v. J. Walter Thompson Co.*, 2013 U.S. Dist. LEXIS 149597, at *14–16 (S.D.N.Y. Oct. 16, 2013) (permitting non-signatory to compel arbitration of arbitrability where contract used the word "parties" under the principle of equitable estoppel); *see also, e.g.*, *Contec Corp. v. Remote Sol. Co.*, 398 F.3d 205, 208–11 (2d Cir. 2005) (where contract used the word "parties," rejecting argument that the "contractual language is effective only between the contracting parties" and allowing non-signatory to compel arbitration of the gateway arbitrability issue of non-signatory enforcement).

For example, in *Physician Consortium Servs., LLC v. Molina Healthcare, Inc.*, 414 F. App'x 240 (11th Cir. 2011),[21] the Eleventh Circuit evaluated an arbitration agreement that limited arbitrable disputes to "any claim by a Party or an Indemnitee against another Party or Indemnitee." *Id.* at 241. A non-party to the agreement attempted to enforce it. *Id.* ("[The contract] defines 'Party' in a way that the Plaintiffs argue excludes [non-party]. The definition is arguably

---

[21] Cited below by HomeServices at App. 803, R. Doc. 758 at 22 n.23.

ambiguous, but we need not discuss it because we assume *arguendo* that [non-party] is not a party to the Purchase Agreement.").

Despite the "Party" language in the arbitration clause, the Eleventh Circuit found that the non-party was "permitted to compel arbitration under equitable estoppel principles." *Id.* at 242. The court determined that the "Plaintiffs [were] attempting an 'end run' to avoid their agreement to arbitrate" through their strained inferred meaning of the use of the word "Party" in the arbitration agreement. *Id.* at 243.

So too here. Since at least June 21, 2019, Plaintiffs have consistently charged HomeServices of America, Inc. with the actions of its Missouri subsidiary companies and have treated HomeServices of America, Inc. and its Missouri subsidiary companies as one and the same. *See, e.g.*, App. 160–61, R. Doc. 38 at 14–15 ¶ 44 ("This Complaint will use the term "HomeServices" to refer to Defendants HomeServices of America, Inc., HSF Affiliates, LLC, BHH Affiliates, LLC, The Long & Foster Companies, Inc., as well as the other entities referred to in this paragraph and their other wholly owned or controlled subsidiaries or affiliates."). They now attempt to supply a distinction when

Appellate Case: 22-2664    Page: 55    Date Filed: 10/19/2022 Entry ID: 5209248

advantageous. This should not be permitted. *Physician Consortium*, 414
F. App'x at 240–43.

## CONCLUSION

This Court should reverse the decision below and order arbitration
to proceed.

Dated: October 19, 2022

Respectfully submitted,

*/s/ Robert D. MacGill*
Robert D. MacGill (97-0310)
Matthew T. Ciulla (22-0322)
Scott E. Murray
MACGILL PC
156 E. Market Street, Suite 1200
Indianapolis, IN 46204
(317) 721-1253

Jay N. Varon (01-0515)
Jennifer M. Keas
FOLEY & LARDNER LLP
3000 K Street NW, Suite 600
Washington, DC 20007
(202) 672-5300

Brian C. Fries
bfries@lathropgage.com
LATHROP GAGE LLP - KCMO
2345 Grand Avenue, Suite 2200
Kansas City, MO 64108-2618
(816) 292-2000

*Counsel for Appellants*
*HomeServices of America, Inc., BHH*
*Affiliates, LLC, and HSF Affiliates,*
*LLC*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a). This brief contains 9,790 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in fourteen (14) point Century Schoolbook font.

Dated: October 19, 2022

*/s/ Robert D. MacGill*
Robert D. MacGill
One of the Attorneys for Appellants

47

## CIRCUIT RULE 28A(h) CERTIFICATION

The undersigned hereby certifies that I have filed electronically, pursuant to Circuit Rule 28A(h), a version of the brief in non-scanned PDF format. I hereby certify that the file has been scanned for viruses and that it is virus-free.

*/s/ Robert D. MacGill*
Robert D. MacGill

48

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on October 19, 2022, an electronic copy of the Brief of Appellants was filed with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. The undersigned certifies that all participants in this case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

*/s/ Robert D. MacGill*
Robert D. MacGill

Appellate Case: 22-2664    Page: 59    Date Filed: 10/19/2022 Entry ID: 5209248