No. 22-2664

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

SCOTT AND RHONDA BURNETT; RYAN HENDRICKSON,
JEROD BREIT, SCOTT TRUPIANO, JEREMY KEEL, FRANCES
HARVEY, and HOLLEE ELLIS, on behalf of themselves and all
others similarly situated,
*Plaintiffs-Appellees*

*v.*

HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC,
HSF AFFILIATES, LLC
*Defendants-Appellants*

THE NATIONAL ASSOCIATION OF REALTORS; REALOGY
HOLDINGS CORP.; RE/MAX LLC; and KELLER WILLIAMS REALTY,
INC.
*Defendants*

———————————

Appeal from the United States District Court
for the Western District of Missouri, Western Division
Civil Docket No. 4:19-cv-00332-SRB
The Honorable Stephen R. Bough, District Judge

## BRIEF OF PLAINTIFFS-APPELLEES

Michael S. Ketchmark
Scott A. McCreight
KETCHMARK & MCCREIGHT, P.C.
11161 Overbrook Road, Suite 210
Leawood, KS 66211
(913) 266-4500

Brandon J.B. Boulware
Jeremy M. Suhr
Erin D. Lawrence
BOULWARE LAW LLC
1600 Genessee, Suite 416
Kansas City, MO 64102
(816) 492-2826

*Attorneys for Plaintiffs-Appellees*

[Additional Counsel Listed on Signature Page]

## APPELLEES' SUMMARY OF THE CASE

After Plaintiffs filed this case in April 2019, HomeServices actively litigated for 305 days before filing a motion to compel arbitration and strike class allegations. *Sitzer v. Nat'l Ass'n of Realtors*, 12 F.4th 853, 855 (8th Cir. 2021). HomeServices has admitted "neither the named plaintiffs nor any purported class member has any contract or direct relationship with HomeServices relevant to the claims asserted in this case." This Court rejected HomeServices's prior appeal, finding HomeServices "waived its right to arbitrate by actively litigating" for nearly a year and noting a "party cannot keep a contractual right to arbitration in its back pocket and pull it out only when it is ready for a 'do over.'" *Id.* at 856–857.

But HomeServices now seeks yet another "do over." Its latest "do over" comes after continuing to actively litigate all aspects of the case below for over two more years, through the completion of fact discovery and after vigorously opposing Plaintiffs' motion for class certification, without ever ***mentioning*** arbitration in hundreds of pages of briefing. And in its Brief here, HomeServices, a non-signatory to the contracts at issue, simply ignores key party-specific language providing for a mutual bar on joinder — that "Neither party will be entitled to join or consolidate disputes by or against others in any arbitration" — wording which both Plaintiffs and the District Court repeatedly discussed. This oversight dooms its appeal.

Fifteen minutes of argument is sufficient.

i

# TABLE OF CONTENTS

APPELLEES' SUMMARY OF THE CASE............................................................ i

TABLE OF AUTHORITIES ................................................................. iv

JURISDICTIONAL STATEMENT .......................................................1

STATEMENT OF THE ISSUES FOR REVIEW ....................................1

STATEMENT OF THE CASE...............................................................3

   I.   Nature of the case .................................................................3

   II.  Plaintiffs, the non-party brokers, and HomeServices .....................5

   III.  The narrow and party-specific arbitration provisions in the Listing
       Agreements between certain Plaintiff class members and
       the non-party brokers ............................................................5

   IV. Procedural history...................................................................9

SUMMARY OF THE ARGUMENT .......................................................18

ARGUMENT ......................................................................................21

   I. Standard of review...........................................................21

   II. Legal Standards ..............................................................21

     A.  Arbitration agreements and delegation agreements ...................21

     B.  Waiver of arbitration rights by litigation conduct ......................23

   III.  HomeServices repeatedly acted inconsistently with any purported
       rights to arbitrate, and the District Court correctly found the
       factual record shows HomeServices waived any arbitration rights.............23

   IV.  Courts, not an arbitrator, must resolve gateway issues because
       there is no agreement of any kind (let alone a delegation agreement)
       between any class member and HomeServices ............................................35

Appellate Case: 22-2664    Page: 3    Date Filed: 11/21/2022 Entry ID: 5219588

V. HomeServices, as non-signatory, is not entitled to enforce any arbitration agreement in the Listing Agreements between class members and non-party brokers due to the mutual prohibition on joining or consolidating disputes or parties in arbitration, language that HomeServices ignores ....................................................................44

   A. So-called single-unit estoppel does not apply ...............................46

   B. Equitable or alternative estoppel does not apply ..........................49

   C. Close-relationship estoppel does not apply .................................51

   D. The District Court properly focused on the specific wording of the arbitration clauses, including the repeated use of the word "Parties" and the mutual bar on adding or joining any other party to an arbitration proceeding....................................................................52

VI. Even if HomeServices could enforce any arbitration agreement, Plaintiffs' claims do not fall within the narrow scope of the arbitration agreements at issue ...........................................................................53

CONCLUSION ...........................................................................................55

Appellate Case: 22-2664     Page: 4     Date Filed: 11/21/2022 Entry ID: 5219588

# TABLE OF AUTHORITIES

**Cases**

*Abdiana Props., Inc. v. Bengston*,
575 S.W.3d 754 (Mo. App. 2019) ........................................................................47

*ABF Freight Sys. v. Int'l Bhd. Of Teamsters*,
728 F. 3d 853 (8th Cir. 2013) ...............................................................................24

*Brown v. Five Star Quality Care, Inc.*,
No. 2:15-CV-4105-RMG, 2016 WL 8710474 (D.S.C. Jan. 8, 2016) ........... 42, 43

*Catamaran Corp. v. Towncrest Pharmacy*,
864 F.3d 966 (8th Cir. 2017) ................................................................................22

*Contec Corp. v. Remote Solution Co.*,
398 F.3d 205 (2d Cir. 2005) .................................................................................40

*De Angelis v. Icon Ent. Grp. Inc.*,
364 F. Supp. 3d 787 (S.D. Ohio 2019) ............................................................ 44, 45

*Dominium Austin Partners, LLC v. Emerson*,
248 F.3d 720 (8th Cir. 2001) ...............................................................................48

*Driver v. BPV Mkt. Place Invs., L.L.C.*,
No. 4:17-CV-1607 CAS, 2018 WL 3363795 (E.D. Mo. July 10, 2018)....... 41, 43

*E.E.O.C. v. Waffle House, Inc.*,
534 U.S. 279 (2002).............................................................................................21

*Eckert/Wordell Architects, Inc. v. FJM Properties of Willmar, LLC*,
756 F.3d 1098 (8th Cir. 2014) ......................................................................... 36, 37

*Eckert/Wordell Architects, Inc. v. FJM Properties of Willmar, LLC*,
No. CIV. 12-968 RHK/JJG, 2013 WL 1942167 (D. Minn. May 9, 2013)...........37

*Edwards v. First Am. Corp.*,
289 F.R.D. 296 (C.D. Cal. 2012).........................................................................27

iv

*Elliott v. KB Home N. Carolina, Inc.*,
   231 N.C. App. 332 (2013) ....................................................................29

*Epic Sys. Corp. v. Lewis*,
   138 S. Ct. 1612 (2018).............................................................. 2, 21

*Ethridge v. TierOne Bank*,
   226 S.W.3d 127 (Mo. banc 2007).........................................................51

*Express Scripts, Inc. v. Aegon Direct Mktg. Servs.*,
   516 F.3d 695 (8th Cir. 2008) ...............................................................22

*Fallo v. High-Tech Inst.*,
   559 F.3d 874 (8th Cir. 2009) ....................................................... 36. 37

*GNH Grp., Inc. v. Guggenheim Holdings, L.L.C.*,
   No. CV 19-1932-CFC, 2020 WL 4287358 (D. Del. July 27, 2020) ...................40

*Gutierrez v. Wells Fargo Bank, NA*,
   889 F.3d 1230 (11th Cir. 2018) ...........................................................32

*H&T Fair Hills, Ltd. v. All. Pipeline L.P.*,
   No. 16-CV-1095 (JNE/BRT), 2021 WL 2526737 (D. Minn. June 21, 2021)......34

*H&T Fair Hills, Ltd. v. All. Pipeline L.P.*,
   No. 19-CV-1095 (JNE/BRT), 2022 WL 875285 (D. Minn. Mar. 24, 2022)  32, 34

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S. Ct. 524 (2019)...................................................... 22, 44, 45

*In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*,
   790 F.3d 1112 (10th Cir. 2015) ............................................. 1, 18, 27

*In re Dealer Mgmt. Sys. Antitrust Litig.*,
   362 F. Supp. 3d 477 (N.D. Ill. 2019)...................................................51

*In re StockX Customer Data Sec. Breach Litig.*,
   19 F.4th 873 (6th Cir. 2021) ...............................................................43

Appellate Case: 22-2664    Page: 6    Date Filed: 11/21/2022 Entry ID: 5219588

*Int'l Bhd. of Elec. Workers, AFL-CIO, Local 1 v. GKN Aerospace N. Am., Inc.*,
    431 F.3d 624 (8th Cir. 2005) ...................................................................21

*Jay Wolfe Used Cars of Blue Springs, LLC v. Jackson*,
    428 S.W.3d 683 (Mo. App. 2014) ................................................... 2, 51

*Jones v. Paradies*,
    380 S.W.3d 13 (Mo. App. 2012) ..................................................... 2, 50

*Jones v. Waffle House, Inc.*,
    866 F.3d 1257 (11th Cir. 2017) ............................................................43

*Kingsbury v. U.S. Greenfiber, LLC*,
    No. CV08-00151-AHM AGRX, 2012 WL 2775022 (C.D. Cal. June 29, 2012).29

*Kramer v. Toyota Motor Corp.*,
    705 F.3d 1122 (9th Cir. 2013) ................................................... 2, 40, 41

*Lamps Plus, Inc. v. Varela*,
    139 S. Ct. 1407 (2019) .................................................................. 21, 50

*Lavigne v. Herbalife, Ltd.*,
    967 F.3d 1110 (11th Cir. 2020) ................................................... 2, 39, 40

*Marino Performance, Inc. v. Zuniga*,
    326 So. 3d 93 (Fla. Dist. Ct. App. 2021) ............................................28

*Messina v. N. Central Distrib., Inc.*,
    821 F.3d 1047 (8th Cir. 2016) ....................................................... 1, 21

*Mitchell v. EEG, Inc.*,
    No. 3:15CV-00903-JHM, 2016 WL 2903286 (W.D. Ky. May 18, 2016).... 42, 44

*Moehrl v. The Nat'l Ass'n of Realtors, et al.*,
    492 F. Supp. 3d 768 (N.D. Ill. 2020) ..................................................11

*Morgan v. Ferrellgas, Inc.*,
    8 F.4th 795 (8th Cir. 2021) ................................................................47

Appellate Case: 22-2664    Page: 7    Date Filed: 11/21/2022 Entry ID: 5219588

*Morgan v. Sundance, Inc.*,
    142 S. Ct. 1708 (2022) ............................................................ 18, 23, 50

*Mumin v. Uber Techs., Inc.*,
    239 F. Supp. 3d 507 (E.D.N.Y. 2017) ........................................ 42, 44

*Netco, Inc. v Dunn*,
    194 S.W.3d 353 (Mo. banc 2006) ..................................... 2, 47, 49, 50

*Oliveira v. New Prime, Inc.*,
    424 F. Supp. 3d 206 (D. Mass. 2019) .............................................28

*Podschun v. Rice*,
    769 S.W.2d 441 (Mo. App. 1989) ...................................................51

*PRM Energy Sys., Inc. v. Primenergy, L.L.C.*,
    592 F.3d 830 (8th Cir. 2010) ...........................................................47

*Rent-A-Ctr., W., Inc. v. Jackson*,
    561 U.S. 63 (2010) ....................................................................... 42, 44

*Scott v. Fam. Dollar Stores, Inc.*,
    No. 308CV00540MOCDSC, 2017 WL 4084059 (W.D.N.C. Feb. 9, 2017)... 1, 27

*Scottrade, Inc. v. Variant, Inc.*,
    No. 13CV1710, 2015 WL 4605734 (E.D. Mo. July 30, 2015) ..........................49

*Shockley v. PrimeLending*,
    929 F.3d 1012 (8th Cir. 2019) ...................................... 2, 22, 44, 45

*Sitzer v. Nat'l Ass'n of Realtors*,
    12 F.4th 853 (8th Cir. 2021) .................................................. passim

*Soars v. Easter Seals Midwest*,
    563 S.W.3d 111 (Mo. 2018) .............................................................43

*Soto v. Am. Honda Motor Co.*,
    946 F. Supp. 2d 949 (N.D. Cal. Oct. 3, 2012) ..................................39

Appellate Case: 22-2664    Page: 8    Date Filed: 11/21/2022 Entry ID: 5219588

*Springfield Iron & Metal, LLC v. Westfall*,
349 S.W.3d 487 (Mo. App. 2011) .........................................................................50

*State ex rel. Hewitt v. Kerr*,
461 S.W.3d 798 (Mo. banc 2015)................................................................ 47, 48

*State ex rel. Pinkerton v. Fahnestock*,
531 S.W.3d 36 (Mo. banc 2017)...............................................................38

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
559 U.S. 662 (2010).........................................................................22

*Stud & Components, Inc. v. Am. Eagle Design Build Studios, LLC*,
588 F.3d 963 (8th Cir. 2009) .............................................................23

*Tennyson v. Santa Fe Dealership Acquisition II, Inc.*,
2016-NMCA-017, ¶ 23, 364 P.3d 1273 (N.M. App. 2015) .................................29

*The Muecke Co., Inc. v. CVS Caremark Corp.*,
No. CV V-10-78, 2012 WL 12535439 (S.D. Tex. Feb. 22, 2012)......................39

*The Republic of Iraq v. BNP Paribas USA*,
472 F. App'x 11 (2d Cir. 2012) ...........................................................39

*Theroff v. Dollar Tree Stores, Inc.*,
591 S.W.3d 432 (Mo. 2020) ...............................................................43

*Triarch Indus., Inc., v. Crabtree*,
158 S.W.3d 772 (Mo. banc 2005).........................................................54

*Upper Lakes Towing Co. v. ZF Padova SpA*,
No. 2:08-CV-63, 2009 WL 4730762 (W.D. Mich. Dec. 4, 2009) ......................39

*Verni v. Cleveland Chiropractic Coll.*,
212 S.W.3d 150 (Mo. banc 2007)........................................................46

Appellate Case: 22-2664     Page: 9     Date Filed: 11/21/2022 Entry ID: 5219588

# JURISDICTIONAL STATEMENT

Plaintiffs accept the jurisdictional statement in the Appellants' Brief.

## STATEMENT OF THE ISSUES FOR REVIEW

1.      Whether litigation conduct by HomeServices in the District Court waived any purported right to enforce the arbitration provisions in the agreements between certain Plaintiffs and non-party real estate brokers when HomeServices, despite knowing about the arbitration agreement at issue, waited 305 days to file any motion to compel arbitration, during which period of delay it instead filed a motion to transfer venue, a motion to dismiss Plaintiffs' First Amended Complaint for failure to state a claim, served and responded to discovery, and fully briefed a class-certification motion without ever mentioning arbitration or any potential request to modify the class definition or notice, despite having agreed to a schedule under which such actions proceeded alongside its untimely motion to compel arbitration?

**Most apposite cases:** *Sitzer v. Nat'l Ass'n of Realtors*, 12 F.4th 853 (8th Cir. 2021); *In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*, 790 F.3d 1112 (10th Cir. 2015); *Messina v. N. Central Distrib., Inc.*, 821 F.3d 1047 (8th Cir. 2016); *Scott v. Fam. Dollar Stores, Inc.*, No. 308CV00540MOCDSC, 2017 WL 4084059 (W.D.N.C. Feb. 9, 2017).

2.      Given HomeServices' concession below that "neither the named plaintiffs nor any purported class member has any contract or direct relationship with

1

HomeServices relevant to the claims asserted in this case" and given that the arbitration clauses at issue, between certain class members and non-party real estate brokers, contain party-specific, bilateral-only arbitration provisions, including a mutual bar against "join[ing] or consolidat[ing] disputes by or against others in any arbitration," is there any agreement between any class member Plaintiff and the non-signatory HomeServices to arbitrate, let alone a clear and unmistakable agreement between them to delegate to an arbitrator the issue of arbitrability?

**Most apposite cases**: *Shockley v. PrimeLending*, 929 F.3d 1012, 1018 (8th Cir. 2019); *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018); *Lavigne v. Herbalife, Ltd.*, 967 F.3d 1110 (11th Cir. 2020); *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122 (9th Cir. 2013).

**3.** Whether HomeServices, as a non-signatory, is entitled to enforce the arbitration provisions in the agreements between certain Plaintiff class members and non-party real estate brokers under Missouri law where HomeServices is a complete stranger to the agreement, as it did not sign it, is not mentioned in it, and performed no function at all under it, and where Plaintiffs' claims do not fall under the scope of the provisions?

**Most apposite cases**: *Netco, Inc. v Dunn*, 194 S.W.3d 353 (Mo. banc 2006); *Jones v. Paradies*, 380 S.W.3d 13 (Mo. App. 2012); *Jay Wolfe Used Cars of Blue Springs, LLC v. Jackson*, 428 S.W.3d 683 (Mo. App. 2014).

2

## STATEMENT OF THE CASE

### I.    Nature of the case

Plaintiffs challenge overt anticompetitive restraints that have inflated residential real estate commissions throughout Missouri. The restraints — including a rule that Plaintiffs refer to as the Adversary Commission Rule — were adopted by Defendant National Association of Realtors ("**NAR**") and agreed and adhered to by each Defendant. Nearly every home sold in the four major metropolitan areas of Missouri is listed on a real estate Multiple Listing Service ("**MLS**"). NAR requires these MLSs to follow NAR's mandatory MLS rules, which include the Adversary Commission Rule. And Appellants-Defendants HomeServices[1] agreed with NAR and the other Corporate Defendants[2] to require their respective families of affiliated, franchisee, and subsidiary real estate brokerages to join these MLSs and adhere to and implement NAR's Rules.

The Adversary Commission Rule is a market-shaping and distorting rule that has severe anticompetitive effects, stifling innovation and competition. The Adversary Commission Rule requires every home seller to offer payment to the broker representing their *adversary*, the buyer, even though the buyer's broker is

---

[1] The term "**HomeServices**" refers collectively to Defendants HomeServices of America, Inc., BHH Affiliates, LLC, and HSF Affiliates, LLC.

[2] The other Corporate Defendants are Realogy Holdings Corp.; RE/MAX, LLC; and Keller Williams Realty, Inc.

Appellate Case: 22-2664     Page: 12     Date Filed: 11/21/2022 Entry ID: 5219588

retained by and owes a fiduciary obligation to the buyer (who may be told, falsely, that the services of the buyer broker are "free"). That is, the Adversary Commission Rule requires the home seller to pay the commission of the buyer broker who, if fulfilling his or her fiduciary duty to the client (the buyer), is actively working against the seller's interest by negotiating for a lower home sales price. This setup defies basic economic commonsense and would not exist in a market free of anticompetitive restraints.

The Adversary Commission Rule also requires that the seller's offered commission payment be a "blanket offer," promising the same commission to every buyer broker on the MLS without regard to their experience or the quality of services they provide to their buyer clients. As a result of the alleged conspiracy and NAR's rules, the required offers of payment to buyer brokers are published to every buyer broker, yet *restricted* from the view of potential home buyers.

Tthe challenged restraints have severed the decision to retain a buyer broker (which is done by a potential home buyer) from the negotiation of the price to be paid to the buyer broker (which is set in the listing agreement between a home seller and the listing agent). This artificial and severed market structure created by Defendants' conduct deters price-cutting competition and innovation, resulting in inflated commissions.

4

## II. Plaintiffs, the non-party brokers, and HomeServices

HomeServices points to two non-party real estate brokerage companies — Reece & Nichols Realtors, Inc. d/b/a ReeceNichols Real Estate ("**ReeceNichols**") and BHH KC Real Estate, LLC d/b/a Berkshire Hathaway HomeServices Kansas City Realty ("**BHH KC**") — with whom certain Plaintiff class members entered into a Listing Agreement to sell their homes. App. 788; R. Doc. 758 at 7.[3] None of the HomeServices entities directly owns either ReeceNichols or BHH KC. Rather, HomeServices of America, Inc. owns non-party HomeServices of MOKAN, LLC, which in turn owns ReeceNichols and BHH KC. App. 341–342; R. Doc. 218-1, ¶¶ 1–10. Neither HomeServices of MOKAN, LLC, nor ReeceNichols, nor BHH KC is a defendant in this case. So one entity seeking to enforce the arbitration provision in the Agreement (HomeServices of America, Inc.) is *two* steps removed from the signatories to the Listing Agreement (ReeceNichols or BHH KC).

## III. The narrow and party-specific arbitration provisions in the Listing Agreements between certain Plaintiff class members and the non-party brokers

As the District Court observed, the Listing Agreements used by the non-party

---

[3] All citations to page numbers in Record Documents below (R. Doc.) and to HomeServices's Brief ("**Br.**") refer to the pagination automatically generated by CM/ECF.

5

brokers included an arbitration provision that appeared in essentially three versions. *See* ADD-2–4 (citing versions used from 2014 to 2017, in 2018, and 2019-2022). And as Plaintiffs noted below (without challenge from HomeServices), ***none*** of the seventeen versions of the Listing Agreements (purportedly used by the non-party brokers in 2020, 2021, and 2022) that HomeServices attached to its Motion (App. 782; R. Doc. 758) were Bates-labeled. App. 1055; R. Doc. 806 at 13. That is because these Listing Agreements were not produced in discovery to Plaintiffs. *Id.* Finally, none of these recent versions of the Listing Agreement has any purported "delegation agreement" via incorporating the Rules of the American Arbitration Association ("**AAA**").[4]

Each version of the Listing Agreement makes clear that its parties are defined solely as "SELLER(S)" and "BROKER," which broker is either non-party ReeceNichols or non-party BHH KC. *E.g.* App. 816; R. Doc. 758-1 at 4, 11. No version of the Listing Agreement defines the term "Broker" to include corporate subsidiaries, parents, affiliates, or any similar term. Indeed, the Listing Agreements nowhere mention HomeServices. Nor do any provisions confer any third-party beneficiary rights on non-signatories to the Listing Agreements. And HomeServices previously admitted that no "class member has any contract or direct relationship

---

[4] *See generally* App. 782; R. Doc. 758 & Exhibits.

with HomeServices relevant to the claims asserted in this case." App. 324; R. Doc. 218 at 7.

The Listing Agreements contain an arbitration provision between certain Plaintiff class members and a non-party broker (ReeceNichols or BHH KC) that states:

**10. Arbitration Agreement:**

Any dispute or claim **between the parties to this Agreement**, its interpretation, enforcement or breach (which includes tort claims arising from fraud and fraud in the inducement), will be settled by binding arbitration. **The parties** will mutually agree and select any qualified intermediary that is a certified Alternative Dispute Resolution specialist. If **the parties** cannot agree upon a qualified intermediary to serve as arbitrator, **either party** may initiate litigation in the appropriate state court for the sole purpose of requesting that the court select a qualified intermediary to serve as arbitrator. This agreement to arbitrate will be construed and interpreted under the Federal Arbitration Act, 9 U.S.C. Section 1, et. seq and supersedes any other agreement **between the parties**. While **each party** will have all the rights and benefits of arbitration, ***both parties are giving up the right to litigate such claims and disputes in a court***. The results, determinations, findings, judgments and/or awards rendered through such arbitration will be final and **binding on the parties hereto** and may be specifically enforced by legal proceedings. Judgment on the award may be entered into any court having jurisdiction. **Neither party will be entitled to join or consolidate disputes by or against others in any arbitration**.

**11. Jury Trial and Class Action Waiver:**

**Neither party** may, in any court proceeding or dispute resolution process, bring any dispute as a representative or member of a class, or to act in the interest of the general public or in any private attorney general capacity. All parties waive all rights to a jury trial. For disputes and claims that do not exceed the lesser of: a) $5,000.00 (five thousand

7

dollars); or b) the applicable jurisdictional limit of small claims court, either party may bring such claims in small claims court in lieu of arbitration.

*E.g.*, App. 816; R. Doc. 758-1 at 10 (emphases added; italicized emphasis in original).

Below, HomeServices characterized the copies of the Listing Agreement used from 2018 through the present as including a "Jury Trial and Class Action Waiver." App. 789; R. Doc. 758 at 8. But HomeServices overlooks that the final sentence of the "Arbitration Agreement" section provides for an even more restrictive and narrow arbitration procedure: any arbitration between a class member and the non-party broker (ReeceNichols or BHH KC) must be ***purely bilateral*** and party-specific, as the Listing Agreement declares that "[n]either party will be entitled to join or consolidate disputes by or against others in any arbitration." App. 816; R. Doc. 758-1 at 10. This language appears in every version of the Listing Agreement under which HomeServices seeks to compel arbitration (including those recent versions that it disclosed for the first time after discovery ended when it filed the post-class-certification motion to compel arbitration at issue).

Finally, just above the signature lines for the "BROKER" (e.g. non-parties ReeceNichols or BHH KC) and "SELLER" appears the following in bold uppercase letters: "**THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED <u>BY THE *PARTIES*</u>**." App. 816;

8

R. Doc. 758-1 at 11 (emphasis added). In short, the Listing Agreements, which repeatedly refer to "the parties," are explicitly limited to the signatory parties to the Agreement: non-party brokers and certain class members.

## IV. Procedural history

Plaintiffs filed this lawsuit on April 29, 2019, and pursuant to an agreed-to motion by all parties (including HomeServices) Plaintiffs filed an Amended Complaint to be subject to an agreed-to briefing schedule regarding motions to dismiss that Defendants indicated they would file. *See* Plaintiffs-Appellees' Separate Appendix 001 (hereafter cited as "**PA-APX_**"); R. Doc. 35. HomeServices made no reference to any possible motion to compel arbitration.

All Defendants, including HomeServices, then indicated they would seek to litigate motions to transfer venue before filing motions to dismiss, and as a result of this dispute, all parties, including HomeServices, participated in a teleconference hearing on July 1, 2019. *See* PA-APX_005–010; R. Docs. 48 & 49. The hearing concerned the sequencing of discovery and the plan by Defendants (including HomeServices) to file transfer and dispositive motions. HomeServices did not mention any potential motion to compel arbitration during the teleconference hearing.

On July 10, 2019, HomeServices joined in filing and fully briefing a motion to transfer this lawsuit to the U.S. District Court for the Northern District of Illinois.

9

PA-APX_011–188; R. Docs. 61, 62, 66, 70. That motion was denied. PA-APX_189; R. Doc. 84. HomeServices also joined in filing and fully briefing a motion to dismiss this lawsuit for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. PA-APX_198–353; R. Docs. 78, 79, 88, 118. That motion too was denied in an Order dated October 16, 2019. PA-APX_354–372; R. Doc. 131.

Ahead of an in-person scheduling hearing set for October 21, 2019, counsel for all parties, including HomeServices, negotiated a proposed scheduling order, and after all parties attended the October 21 hearing, the District Court entered a Scheduling Order on October 23, 2019. PA-APX_373–380; R. Doc. 144. All parties, including HomeServices, thereafter engaged in written discovery and participated in numerous meet-and-confer conferences to resolve discovery disputes.

As all parties, including HomeServices, began to engage in this written discovery, the parties in January 2020 jointly negotiated and filed an agreed-to motion to adjust certain scheduling deadlines. PA-APX_381–397; R. Docs. 201, 203. In this joint submission, the parties requested that the District Court set regular, monthly status conferences to address discovery and case-management issues. *Id.* On February 24, 2020, the District Court entered a Notice of Hearing setting specific hearing dates for monthly status conferences through December 2020. PA-APX_398; R. Doc. 215. Additional regular status conferences were scheduled and held in 2021 and 2022.

On February 28, 2020, three hundred and five days after Plaintiffs filed this lawsuit, HomeServices filed its "Motion: (1) To Compel Arbitration, (2) To Strike Class Allegations As To Certain Unnamed Plaintiffs, and (3) To Stay Proceedings With Respect To The HomeServices Defendants Pending Arbitration." PA-APX_401; R. Doc. 217. After Plaintiffs filed their Suggestions in Opposition, App. 564; R. Doc. 230, and HomeServices filed a Reply, App. 586; R. Doc. 232, the District Court denied the motion in an Order dated April 10, 2020. App. 618; R. Doc. 239.

HomeServices filed an appeal purporting to challenge all aspects of the District Court's April 10, 2020 Order, App. 630; R. Doc. 241, though as this Court later noted HomeServices did not sufficiently brief its challenge to the District Court's ruling rejecting the request to strike or amend the class allegations and definition. *Sitzer*, 12 F.4th at 855 & n.2.

On October 2, 2020, a court in the Northern District of Illinois (the District to which HomeServices and the other defendants sought to transfer this case) issued an order denying motions to dismiss filed by HomeServices, NAR, and other defendants in an antitrust case captioned *Moehrl v. The Nat'l Ass'n of Realtors, et al. See* 492 F. Supp. 3d 768 (N.D. Ill. 2020). Not long after, HomeServices filed a "Motion to Strike Certain Class Allegations" in *Moehrl*, raising similar arguments about purported arbitration agreements between putative class members and non-

11

party brokers while seeking relief similar to that sought in its February 2020 motion in this case of striking and/or amending the class allegations. App. 1043 & 1087; R. Doc. 806 at 17 (citing R. Doc. 806-1).

On May 24, 2021, Plaintiffs filed their Motion for Class Certification and designation of expert witness testimony. *See* App. 67 (reflecting filing of R. Docs. 459 & 460). On June 15, 2021, all parties (including HomeServices) filed a Joint Motion to extend certain scheduling deadlines, including their deadline for opposing Plaintiffs' certification Motion. PA-APX_404; R. Doc. 467. HomeServices said nothing about any purported arbitration rights.

In July 2021, Defendants (including HomeServices) deposed Plaintiffs' class certification expert witness. App. 69 (reflecting filing of R. Doc. 483). Also in that month, the *Moehrl* court ruled on the "Motion to Strike Certain Class Allegations" that HomeServices had filed in late 2020 and in which it sought to "strike certain class allegations and narrow the class definition to exclude putative class members who signed an arbitration agreement" with non-party brokers affiliated in some fashion with HomeServices. App. 1111; R. Doc. 806-2. The *Moehrl* court denied the motion, reasoning that its review was limited to the pleadings and should not consider the arbitration agreements attached by HomeServices to its motion. App. 1113; R. Doc. 806-2 at 4. Importantly, however, the *Moehrl* court observed that "[r]egardless of the merits of HomeServices Defendants' arguments for narrowing

12

the class definition, the matter is ***best addressed when Plaintiffs move for class certification***." App. 1115; R. Doc. 806-2 at 6 (emphasis added).

Approximately two months later, on September 10, 2021, this Court issued its opinion affirming the District Court's Order denying the first motion to compel arbitration, finding HomeServices had both "waived its right to arbitrate by actively litigating this case in federal court for close to a year" and also failed to adequately brief and preserve its challenge to the aspect of District Court's Order denying HomeServices's request to strike or amend the class allegations and definition. *Sitzer*, 12 F.4th at 855 & n.2, 856.

On October 21, 2021, the parties below filed another Joint Motion for Amended Scheduling Order in which all Defendants (including HomeServices) requested a November 12, 2021 deadline to oppose Plaintiffs' Motion for Class Certification. PA-APX_420; R. Doc. 542. This Joint Motion also requested deadlines for the close of fact discovery, disclosure of merits experts (May 6, 2022 for Plaintiffs, a deadline Plaintiffs met, *see* PA-APX_432; R. Doc. 761), a deadline for dispositive motions in August 2022, and a trial date beginning February 21, 2023. PA-APX_420; R. Doc. 542. HomeServices said nothing about any potential right to compel arbitration or any plans to seek arbitration-related relief such as excluding members from the class or seeking a stay, all of which would clearly disrupt the tightly-sequenced deadlines agreed to in the Joint Motion.

13

Defendants (including HomeServices) then filed more than a hundred pages of briefing related to class certification issues on November 12, 2021, as they both opposed Plaintiffs' Motion for Class Certification (R. Doc. 553) and filed a *Daubert*-based Motion regarding Plaintiff's expert witness. App. 75 (reflecting filing of R. Docs. 552, 553, 554). HomeServices did not make even a passing reference to arbitration anywhere in these filings, despite having been advised by the *Moehrl* court just months earlier that arguments about purported arbitration rights against unnamed class members and arbitration-related amendments to or striking of class definitions are "best addressed" during consideration of class certification.[5]

In December 2021 and January 2022, the parties completed lengthy briefing on class certification and *Daubert* issues, again without any mention of arbitration by HomeServices. *See* App. 78, 83 (reflecting filing of R. Docs. 582, 635, 636, 637). During this time, the District Court also conducted its regular Monthly Status Teleconference hearings, and HomeServices never raised any purported right to arbitrate as to putative class members nor any issues regarding how its arbitration rights could affect the class definitions or allegations being briefed. PA-APX_452–462; R. Docs. 561, 610, 618 (reflecting teleconference hearings held on December

---

[5] Notably, one Defendant (Realogy Holdings Corp.) did file a separate Opposition to Plaintiffs' Motion for Class Certification. PA-APX_434; R. Doc. 556. HomeServices equally could have filed a separate Opposition and raised arbitration-related arguments, but it chose not to.

14

7, 2021, January 13, 2022, and January 18, 2022). The parties (including HomeServices) participated in nearly 50 depositions of party and non-party witnesses between October 2021 and May 2022.

On April 18, 2022, the District Court held a two-hour-plus evidentiary hearing and oral argument regarding class certification and class *Daubert* issues. PA-APX_463; R. Doc. 732. Counsel for HomeServices appeared and argued for all Defendants but said nothing about any purported right to arbitrate or any potential need to strike or amend the class definition. The Court issued an Order granting class certification on April 22, 2022. App. 738; R. Doc. 741.

On May 5, 2022, HomeServices filed the motion giving rise to this appeal. App. 779, 782; R. Docs. 757 & 758. The next day, all Defendants, including HomeServices, filed in this Court a Petition for Permission to Appeal Class Certification Decision Pursuant to Federal Rule of Civil Procedure 23(f). *See* 8th Cir. Case No. 22-8009. The Rule 23(f) Petition said nothing about any purported right to arbitration by HomeServices. Nor was arbitration mentioned in the Motion for Leave to File Reply in Support of Defendants' Rule 23(f) Petition that Defendants (including HomeServices) filed on May 20, 2022. *Id.*[6]

---

[6] This Court denied Defendants' Rule 23(f) Petition on June 2, 2022.

15

On May 27, 2022, the other remaining Defendants filed their own Motion seeking to compel arbitration and/or stay proceedings, PA-APX_467–490; R. Docs. 784 & 785, making their filing multiple weeks after the Court directed all parties to meet and confer regarding the proposed class notice, App. 778; R. Doc. 741 at 41.

On May 31, 2022, HomeServices and the other Defendants made various filings in the *Moehrl* litigation opposing the motion for class certification filed in that case. Defendants' class certification opposition in *Moehrl* **did raise** arbitration defenses to certification, in contrast to the silence about arbitration in the class certification opposition briefing in this case. *See* App. 1116; R. Doc. 806-3. HomeServices and the other Defendants argued that a class representative in *Moehrl* who sold a home through a HomeServices-affiliated non-party broker was not "typical" given that the particular class representative's listing agreement did not contain an arbitration clause, while many putative class members' listing agreements with other HomeServices-affiliated non-party brokers did have such clauses. *Id.*

Plaintiffs filed their Opposition to the motion at issue on June 16, 2022. App. 1043–1121; R. Doc. 806.[7] After HomeServices filed its Reply on June 30, 2022, App. 1122; R. Doc. 822, the District Court entered an Order on July 19, 2022 denying the Motion (and denying the Motion filed by the other Defendants). App.

---

[7] Plaintiffs also filed a separate Opposition to the motion to compel arbitration and stay proceedings filed by the other Defendants. PA-APX_491; R. Doc. 807.

Appellate Case: 22-2664     Page: 25     Date Filed: 11/21/2022 Entry ID: 5219588

1146; R. Doc. 843.

The District Court's Order set forth multiple grounds on which it denied HomeServices's Motion: (1) it made specific factual findings supporting its conclusion that HomeServices yet again waived any purported arbitration rights, determining that "HomeServices had ample opportunity to raise its intention of asserting its arbitration rights against unnamed class members prior to the Court's class certification order," ADD-9; (2) it concluded no delegation agreement exists, as HomeServices admitted it had no "contract or direct relationship" with any class members "relevant to the claims asserted in this case," and the "narrow, party-specific language at issue does not clearly and unmistakably delegate to an arbitrator threshold issues of arbitrability between non-parties, including HomeServices," ADD-11; and (3) it concluded HomeServices was not entitled to enforce the arbitration agreement under any of the three theories it advanced, as the District Court found "the Arbitration Agreements themselves prevent nonsignatories from being treated jointly for arbitration purposes," as critical language did not allow the non-party brokers "or Plaintiffs to 'join or consolidate disputes . . . against' HomeServices 'in any arbitration.'" ADD-15 (quoting R. Doc 218-2, p. 92). The other Defendants chose not to appeal from this Order, but HomeServices filed a Notice of Appeal on August 8, 2022. App. 1162; R. Doc. 877.

# SUMMARY OF THE ARGUMENT

Multiple independent grounds support affirming the District Court's Order.

**First**, HomeServices's extensive litigation conduct in this case — both in the 305 days leading up to filing its first motion (which was denied, and affirmed by this Court) and in the lengthy following period during which it continued to vigorously contest Plaintiffs' claims on the merits without ever mentioning arbitration (and without even producing during discovery copies of the 2020, 2021, or 2022 versions of the Listing Agreements revealed for the first time, after the close of fact discovery, when attached to its Motion below) — shows that it "knowingly relinquish[ed any] right to arbitrate by acting inconsistently with that right." *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1714 (2022). Indeed, many courts have held that a defendant's failure to raise arbitration issues during the class certification process results in waiving any arbitration rights. *See, e.g.*, *In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*, 790 F.3d 1112, 1120 & n.2 (10th Cir. 2015).

**Second**, the District Court rightly determined that no delegation agreement exists between HomeServices and any class member. The arbitration and delegation language at issue appears in Listing Agreements between certain Plaintiffs and non-party brokers. And the provisions in those Listing Agreements contain both unique, narrow and party-specific language and a mutual bar on joining or adding other parties to any arbitration — but that is exactly what HomeServices, as a non-

18

signatory not even mentioned in those Listing Agreements, seeks to do. The District Court's conclusion is also supported by HomeServices's admission that no "class member has any contract or direct relationship with HomeServices relevant to the claims asserted in this case," App. 324; R. Doc. 218 at 7; *see* ADD-15 (quoting R. Doc 218-2, p. 92). HomeServices provided no argument to rebut the District Court's finding that HomeServices's prior concession combined with the "narrow, party-specific language at issue" mean there is no delegation agreement here. ADD-11.

**Third**, none of the grounds that HomeServices advances for permitting a non-signatory to enforce an arbitration agreement is supported under Missouri law. HomeServices also failed to explain why the District Court erred in finding that the Listing Agreements "themselves prevent nonsignatories from being treated jointly for arbitration purposes." ADD-15. As the District Court observed, "[e]ven if Plaintiffs had joined ReeceNichols and BHH KC to this lawsuit and asserted claims against them, the Arbitration Agreements do not allow ReeceNichols, BHH KC, or Plaintiffs to "join or consolidate disputes . . . against" HomeServices "in any arbitration." *Id.* (R.Doc. #218-2, p. 92). Nowhere does HomeServices attempt to address this crucial language in the arbitration provision or this basis for the District Court's Order. This failure alone dooms its appeal.

**Fourth**, even if some basis existed for HomeServices, as a non-signatory, to enforce the arbitration provisions, Plaintiffs' claims do not fall within the scope of

19

the narrow, party-specific language at issue. HomeServices' arguments otherwise amount to re-writing the arbitration language.

Appellate Case: 22-2664    Page: 29    Date Filed: 11/21/2022 Entry ID: 5219588

# ARGUMENT

## I.  Standard of review

In general, this Court reviews *de novo* the denial of a motion to compel arbitration. *See Int'l Bhd. of Elec. Workers, AFL-CIO, Local 1 v. GKN Aerospace N. Am., Inc.*, 431 F.3d 624, 627 (8th Cir. 2005). However, while this Court will "review de novo the district court's conclusion that a party has waived arbitration," this Court will "examine the factual findings underlying that ruling for clear error." *Messina v. N. Cent. Distrib., Inc.*, 821 F.3d 1047, 1050 (8th Cir. 2016).

## II.  Legal Standards

### A. Arbitration agreements and delegation agreements

The Supreme Court has emphasized that "consent" is the "first principle" in the arbitration context, *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1416 (2019), and that courts must "rigorously [] enforce arbitration agreements according to their terms, including terms that specify *with whom* the parties choose to arbitrate." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (emphasis in original, quotation omitted). As the Supreme Court has stated, "nothing in the statute authorizes a court to compel arbitration of any issues, *or by any parties*, that are not already covered in the agreement." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (emphasis added).

21

Both the Supreme Court and this Court have held that *courts* must decide whether an attempt to expand and add parties to an arbitration was consented to in the arbitration agreement. *See, e.g.*, *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 683–84 (2010); *Catamaran Corp. v. Towncrest Pharmacy*, 864 F.3d 966, 972 (8th Cir. 2017) (concluding that determinations regarding adding parties to an arbitration, in that case on a class-wide basis, is an analysis that "belongs with the courts as a substantive question of arbitrability").

"A dispute like the one here — over whether the parties agreed to arbitrate — will be resolved by the district court [u]nless the parties clearly and unmistakably provide otherwise." *Express Scripts, Inc. v. Aegon Direct Mktg. Servs.*, 516 F.3d 695, 701 (8th Cir. 2008) (quotation omitted, alteration in original). The parties to an arbitration agreement might "clearly and unmistakably provide otherwise" through a separate "delegation agreement" by which the parties agree to commit such "gateway" issues to an arbitrator, but as the Supreme Court cautioned, even in that circumstance, "[t]o be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019); *see also Shockley v. PrimeLending*, 929 F.3d 1012, 1018 (8th Cir. 2019) (holding that challenges to delegation and arbitration provisions can be presented in the same manner, and holding that any purported delegation agreement must be valid under Missouri

22

contract law, which means showing an offer, acceptance, and bargained-for consideration between the parties to the purported delegation agreement).

### B. Waiver of arbitration rights by litigation conduct

Whether a party has waived its right to arbitration though litigation conduct is a matter for courts to decide. *See Sitzer*, 12 F.4th at 855–856. Waiver occurs when a party knows of an existing right to arbitration and acts inconsistently with that right. *Id.*; *see Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713–1714 (2022). This Court has held that to "safeguard its right to arbitration, a party must do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration." *See Stud & Components, Inc. v. Am. Eagle Design Build Studios, LLC*, 588 F.3d 963, 969 (8th Cir. 2009) (quotation omitted).

### III. HomeServices repeatedly acted inconsistently with any purported rights to arbitrate, and the District Court correctly found the factual record shows HomeServices waived any arbitration rights

In its Brief, Br. at 31–39, HomeServices does not even attempt to address this Court's express findings, in affirming the District Court's denial of HomeServices's first motion to compel arbitration, that HomeServices both "waived its right to arbitrate by actively litigating this case in federal court for close to a year" and also failed to adequately brief and preserve its challenge to the aspect of the District

23

Court's April 2020 Order denying HomeServices's request to strike or amend the class allegations and definition. *Sitzer*, 12 F.4th at 855 & n.2, 856. HomeServices ignores the District Court in part denied its motion below after concluding the "Eighth Circuit has already determined that HomeServices waived any purported arbitration rights." ADD-7. HomeServices's arguments to avoid these well supported factual findings of waiver suffer from three primary flaws.

**First**, citing no Eighth Circuit authority, HomeServices seeks to ignore anything that happened before class certification on the premise that it is "jurisdictionally impossible" for a district court to compel arbitration as to unnamed class members such that it "cannot" be true that failing to raise arbitration rights as to unnamed class members amounts to wavier. Br. at 32. This argument ignores that, as a case cited by HomeServices emphasizes, safeguarding a "'right to arbitration'" requires that a party "'do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration.'" Br. at 31 (quoting *ABF Freight Sys. v. Int'l Bhd. Of Teamsters*, 728 F. 3d 853, 862 (8th Cir. 2013)). As shown by HomeServices's conduct recited in *Sitzer*, HomeServices's actions have always reflected its decision to proceed in court, rather than litigation. *See Sitzer*, 12 F.4th at 856–857 (finding HomeServices "aggressively" pursued litigation over arbitration by filing a "change-of-venue motion" and seeking a ruling on the merits by filing "a motion to dismiss for failure

24

to state a claim" and waiting 305 days to assert any arbitration rights).

Moreover, in its briefing to the District Court, HomeServices recognized it could have done more pre-certification to pursue its purported arbitration rights. Specifically, HomeServices mischaracterized its prior arbitration motion, wrongly stating that it previously "did not seek relief with respect to any putative absent class members." App. 793; R. Doc. 758 at 12. That is plainly contradicted by both the title of its prior motion, App. 315; R. Doc. 217,[8] and the substance of its supporting suggestions, App. 334–337; R. Doc. 218 at 17–20. HomeServices likely downplayed that aspect of its first motion given its failure to "meaningfully argue" issues relating to absent class members before this Court. *See Sitzer*, 12 F.4th at 855 & n.2. As this Court noted, in its first appeal, HomeServices "purport[ed] to challenge" the District Court's ruling denying its request "to strike the allegations relating to other members of the putative class" but, because HomeServices "needed to do more than merely mention an alleged error," this Court declined to consider such issues as not meaningfully argued. *Id.* HomeServices already spurned one opportunity to raise issues about putative class members by failing to present any meaningful argument to this Court in its first appeal, and this Court should decline to consider

---

[8] The title was: "Motion: (1) To Compel Arbitration, (2) To Strike Class Allegations As To Certain Unnamed Plaintiffs, and (3) To Stay Proceedings With Respect To The HomeServices Defendants Pending Arbitration." App. 315; R. Doc. 217.

Appellate Case: 22-2664    Page: 34    Date Filed: 11/21/2022 Entry ID: 5219588

HomeServices's belated effort to argue them now.

**Second**, HomeServices's focus on its alleged inability to compel arbitration of claims by absent class members ignores several key points. *See* Br. at 32–35. It ignores that the *Moehrl* court expressly advised HomeServices in July 2021 — four months before HomeServices opposed Plaintiffs' Motion for Class Certification in this case below — that arbitration-related arguments are "best addressed" during class certification briefing. App. 1115; R. Doc. 806-2 at 6. Yet HomeServices said not a word about arbitration despite filing hundreds of pages of briefing addressing class certification issues. HomeServices also spurned the option of filing a separate opposition to Plaintiffs' class-certification motion to raise arbitration-related issues, even though a co-defendant filed an Opposition to raise what it viewed as defendant-specific arguments. *See* PA-APX_434; R. Doc. 556.

HomeServices's Brief also ignores that many courts have found waiver of arbitration rights as to absent class members when defendants did not promptly raise their purported arbitration rights, especially when defendants did not raise such arbitration issues in connection with class certification proceedings. Plaintiffs cited each of the following cases in their briefing below, App. 1051–1052, 1072–1073; R. Doc. 806 at 9–10, 30–31, yet HomeServices does not even cite let alone attempt to distinguish any of these cases:

26

- *In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*, 790 F.3d 1112, 1120 & n.2 (10th Cir. 2015) (defendant's "contention that it could not compel arbitration before certification also does not excuse its failure to raise or mention the arbitration clauses during the court's Rule 23 analysis," and stating that "whether a defendant may compel unnamed putative class members to arbitrate is an issue properly litigated via a motion to certify a class") (quotation omitted);

- *Edwards v. First Am. Corp.*, 289 F.R.D. 296, 307 (C.D. Cal. 2012) (noting that while it was "true that Defendants likely could not have moved to compel arbitration of the Tower City class members' claims until after the class was certified," still "Defendants could have asserted their intention to raise arbitration as a defense at a much earlier stage in the proceeding," and concluding that, by having sought a dismissal on the merits and having sought appellate review of a class certification order, "Defendants' conduct thus evinced a conscious decision to continue judicial judgment on the merits" that supported finding waiver) (quotations omitted);

- *Scott v. Fam. Dollar Stores, Inc.*, No. 308CV00540MOCDSC, 2017 WL 4084059, at *2, *4 (W.D.N.C. Feb. 9, 2017) (denying motion to compel arbitration filed after court certified class, concluding "the

27

defendant here has not brought the enforcement of the arbitration rights *at the proper stage*, which would have been at class certification or via a Motion to Amend Class Definition" and instead waived any arbitration rights "by not seeking such at the time of certification," and stating that doing so only after the "laborious and expensive process of certifying a class is now complete . . . is simply too little too late");

- *Marino Performance, Inc. v. Zuniga*, 326 So. 3d 93, 94–95 (Fla. Dist. Ct. App. 2021) (affirming denial of motion to compel arbitration based on finding that defendant "waived its right to compel arbitration as to both the named plaintiffs and the unnamed class members" where it had filed a motion for judgment on the pleadings and then engaged in substantial discovery such that Defendant "failed to provide fair notice of its intent to rely on the arbitration provision during litigation and only raised it on the eve of the class certification hearing");

- *Oliveira v. New Prime, Inc.*, 424 F. Supp. 3d 206, 212–13 (D. Mass. 2019) (finding waiver and denying motion to compel arbitration to opt-in plaintiffs while class certification motion was pending, distinguishing outlier caselaw by noting that such defendant had "specifically preserved its right to compel arbitration as to unnamed putative class members before a motion to dismiss was decided" and

28

thus gave "fair notice to the opposing party and the District Court of a party's arbitration rights and its intent to exercise them");

- *Tennyson v. Santa Fe Dealership Acquisition II, Inc.*, 2016-NMCA-017, ¶ 23, 364 P.3d 1273, 1279 (affirming denial of motion to compel arbitration as to absent class members due to waiver and noting that "[s]imply because the district court did not have jurisdiction to compel absent class members to arbitrate their claims does not mean that Defendants had no obligation to rely upon the clause before the district court granted Plaintiffs' motion to certify");

- *Elliott v. KB Home N. Carolina, Inc.*, 231 N.C. App. 332, 346 (2013) (affirming finding that "Defendant waived its right to compel the unnamed class members to arbitration" given that "[m]ore than three years and four months passed between the initiation of this class action and Defendant's motion to compel arbitration" and "Defendant litigated this case that entire time while sitting on any contractual rights it had to arbitrate");

- *Kingsbury v. U.S. Greenfiber, LLC*, No. CV08-00151-AHM AGRX, 2012 WL 2775022, at *5 (C.D. Cal. June 29, 2012) (denying motion to compel arbitration as to absent class members based on waiver, and rejecting argument that defendant could not have moved earlier due to

29

belief that such a motion was futile and only became viable after the Supreme Court's *Concepcion* decision; the court also noted that defendant raised no arbitration issues in opposing class-certification).

That HomeServices *did* raise arbitration issues in opposing class certification in the *Moehrl* litigation shows these same kinds of arguments could and should have been raised below. In its *Moehrl* class-certification opposition, HomeServices argued that, because many class members did enter into Listing Agreements containing arbitration clauses with other non-party brokers related to HomeServices, the class representative who did not was not "typical" and could not "be an adequate representative" for those class members who were parties to arbitration agreements. App. 1118–1121; R. Doc. 806-3 at 3–6. The defendants in *Moehrl* thus requested that, "if the Court is inclined to grant class certification in part, it should nonetheless exclude all class members that have arbitration agreements with" non-party brokers affiliated with HomeServices. App. 1121; R. Doc. 806-3 at 6.

HomeServices should have made those same arguments below if it wished to assert and preserve any arbitration rights. Indeed, given HomeServices's apparent view that any waiver finding made by this Court in *Sitzer* was limited and "applied only to the Burnetts," App. 793; R. Doc. 758 at 12, then the Burnetts were even less "typical" than the class representative(s) in *Moehrl*. That is, in *Moehrl* there are both many thousands of class members who dealt with non-party brokers affiliated with

30

HomeServices and have **no** arbitration agreement, but also many thousands of class members who **do** have an arbitration agreement with a non-party broker affiliated with HomeServices. The representative in *Moehrl* might not be typical for all class members but would still be typical for many thousands of others who also have no arbitration agreements. In contrast, according to HomeServices, the Burnetts are unique to the class here — as they are subject to a waiver finding applying exclusively to them and no others — yet HomeServices never raised any issue about the typicality of the Burnetts' claims (or their adequacy as representatives) throughout the year-long period of class certification efforts.

By keeping these arbitration arguments in its back pocket until its post-certification Motion (in stark contrast to its conduct in *Moehrl*), HomeServices could have wreaked havoc on the parties' carefully arranged schedule and trial date set for February 2023. All parties spent substantial time and expense in negotiating and effectuating class notice, and much of that work could be for naught (and significant costs required) if Plaintiffs are later required to send additional notice excising class members who dealt with non-party brokers ReeceNichols or BHH KC should HomeServices's purported arbitration rights be enforced in this appeal.

These circumstances illustrate why arbitration issues should and must be raised at the earliest opportunity, so they can be explored during the class certification process and not disrupt scheduling orders or pose risks of needing to

31

send multiple and costly additional class notices. Although prejudice is no longer required in the waiver analysis post-*Morgan*, prejudice here is abundant due to the calculated strategy by HomeServices to delay asserting its purported arbitration rights until after completion of the class certification process.

**Third**, the two principal cases on which HomeServices relies — in attempting to argue that remaining silent about any purported arbitration rights while vigorously contesting Plaintiffs' efforts to certify a class on non-arbitration-related grounds did not work a waiver of any arbitration rights — involved significantly different facts. Br. at 32–33 (citing *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230 (11th Cir. 2018), and *H&T Fair Hills, Ltd. v. All. Pipeline L.P.*, No. 19-CV-1095 (JNE/BRT), 2022 WL 875285 (D. Minn. Mar. 24, 2022)).

In *Gutierrez*, the Eleventh Circuit observed that the defendant "stated expressly in its response to the District Court's scheduling order that it did not plan to seek arbitration with the named Plaintiffs" while emphasizing in "that same response [ ], which it filed well before any discovery had been conducted," that it preserved any arbitration rights against unnamed plaintiffs "for when the matter became ripe for the Court to consider them." 889 F.3d at 1237. The Eleventh Circuit also noted that when plaintiffs moved to certify a class, the defendant both raised arbitration-related arguments in opposing class certification and, at "the same time it filed its opposition to class certification, [the defendant] filed conditional motions

32

to compel arbitration against the unnamed class members in the event the District Court certified the class." *Id.* at 1235.

In contrast, despite regular and ample opportunities to raise case-management issues with the District Court during Monthly Status Conferences, HomeServices never gave any indication that it intended to pursue any arbitration rights against unnamed class members. And HomeServices ***did not mention*** arbitration at all in its extensive and vigorous opposition to Plaintiffs' efforts to certify a class (efforts that included a Rule 23(f) Petition that also omitted any mention of arbitration issues). Moreover, HomeServices participated in joint negotiations to amend various scheduling deadlines in a compact sequence without ever suggesting that it might assert arbitration rights and contend any class definitions could be subject to amendment or excision. *See generally* Statement of the Case, § IV., *supra*. The conduct of the defendant in *Gutierrez* and that of HomeServices is nothing alike. And the District Court rightly made a specific factual finding that "HomeServices had ample opportunity to raise its intention of asserting its arbitration rights against unnamed class members prior to the Court's class certification order." ADD-9.

The facts in *H&T Fair Hills* are similar to *Gutierrez* — and very unlike those here. In *H&T Fair Hills*, the defendant expressly raised arbitration issues in the class certification briefing, arguing that, because the named plaintiffs were not subject to enforceable arbitration agreements, typicality was lacking and also arguing that

33

predominance could not be shown given that many class members were subject to arbitration agreements "that will require individualized determinations." *H&T Fair Hills*, 2021 WL 2526737, at \*7, \*11 (D. Minn. June 21, 2021). Because of that background and the defendant's clear assertion of arbitration rights during the class certification briefing process, the district court concluded the defendant there "did all it could reasonably have been expected to do to raise its right [to arbitration] at the earliest feasible time" when it moved to compel arbitration fifteen days after a class was certified. *H&T Fair Hills*, 2022 WL 875285, at \*9 (D. Minn. Mar. 24, 2022). Again, the contrast between that defendant's conduct and that of HomeServices is stark: HomeServices vigorously contested Plaintiffs' efforts to certify a class below without ever mentioning arbitration and only sought its arbitration-related "do over" after those efforts failed when the District Court certified a class. *See Sitzer*, 12 F.4th at 856 ("We have little doubt about what HomeServices was trying to do. If there was a possibility that the case would end in federal court, it was uninterested in switching to arbitration.").

HomeServices chose to attempt to defeat class certification in federal court (and thereby effectively end any litigation against it) without ever mentioning arbitration.[9] Only after those efforts failed did HomeServices resort to its arbitration

---

[9] HomeServices also misses the mark in its arguments noting that Plaintiffs, in the context of opposing broad stays of the entire class action lawsuit pending appeal, (***Footnote continued***)

Appellate Case: 22-2664     Page: 43     Date Filed: 11/21/2022 Entry ID: 5219588

"do over" card that it had kept hidden "in its back pocket" throughout months and years of hard-fought litigation (and that it failed to meaningfully argue during its first appeal). *Sitzer*, 12 F.4th at 857; Statement of the Case, § IV., *supra*. This Court should not countenance such gamesmanship, and it should affirm the District Court's denial of HomeServices's Motion because HomeServices's conduct throughout this litigation clearly waived any purported arbitration rights as to ***all*** class members.

IV. **Courts, not an arbitrator, must resolve gateway issues because there is no agreement of any kind (let alone a delegation agreement) between any class member and HomeServices**

Ignoring its prior concession that no "class member has any contract or direct relationship with HomeServices relevant to the claims asserted in this case," App.

---

have emphasized that HomeServices remains exposed to "potential joint-and-several liability for the actions of its alleged co-conspirators." Br. at 36–37; *id.* at 38 (arguing "HomeServices could not refuse to participate in the defense of this matter and wait for its motion to arbitrate to become jurisdictionally possible").

The point is that HomeServices, in all of its many and aggressive efforts to defend itself on the merits, has repeatedly failed to pursue opportunities to assert and accommodate any purported arbitration rights. For example, it failed to meaningfully appeal and brief its challenge to the District Court's April 2020 denial of HomeServices's request to strike class allegations. *Sitzer*, 12 F.4th at 855 & n.2. Likewise, instead of jointly negotiating numerous tightly sequenced scheduling orders and briefing class certification without ever mentioning arbitration, HomeServices could and should have insisted that the scheduling deadlines and class certification process (including class notice timing) reflect its potential arbitration rights and permit time for those rights to be asserted and addressed without threatening to upend the schedule.

35

324; R. Doc. 218 at 7, HomeServices argues that "two" such "independently sufficient" purported "delegation agreements" *do exist* between HomeServices and unnamed class members. Br. at 39–41. But HomeServices offers no argument to rebut the District Court's finding that HomeServices's prior concession, combined with the "narrow, party-specific language at issue," mean there is no delegation agreement here. *See* ADD-11. Failing to challenge this finding alone compels affirmance. HomeServices's delegation-related arguments have three other flaws.

**First**, HomeServices relies on two Eighth Circuit cases, but neither supports its argument that HomeServices — as a non-signatory and non-party that is barred from participating in any arbitration by the language of the Listing Agreements, which are between certain class members and *non-party brokers* — nonetheless has a "delegation agreement" with those class members. Br. at 40 (citing *Eckert/Wordell Architects, Inc. v. FJM Properties of Willmar, LLC*, 756 F.3d 1098 (8th Cir. 2014), and *Fallo v. High-Tech Inst.*, 559 F.3d 874 (8th Cir. 2009)).

To start, *Fallo* did not involve a non-signatory attempting to enforce an arbitration agreement or claiming the plaintiff agreed to delegate arbitrability to an arbitrator in disputes with non-signatories. *Fallo* also involved an extremely broad

arbitration provision lacking any limits on parties or subject matter.[10] The arbitration language at issue in *Eckert* was likewise extremely broad, requiring arbitration of "[a]ny claim, dispute, or other matter in question arising out of or related to [the contract]." *Eckert*, 756 F.3d at 1099 (quotation omitted, alterations in original).[11]

Such language stands in stark contrast to the narrow, party-specific language used here that both restricts arbitration to disputes or claims "between the parties to this Agreement" and that also mutually bars each contracting party from "join[ing]

---

[10] The *Fallo* language broadly required arbitration of "[a]ny controversy or claim arising out of or relating to this Agreement, or breach thereof, no matter how pleaded or styled." 559 F.3d at 876.

[11] Nor does *Eckert* stand for the proposition that the presence of a delegation agreement necessarily means that a non-signatory is entitled to enforce the delegation agreement. In *Eckert*, the initial contract was between Eckert and an entity named "Fischer Laser Eye Center, LLC" ("Fischer LLC"). 756 F.3d at 1099. But over time, the owners of Fischer LLC formed a new company, which eventually came to be known as "FJM Properties." *Id.* FJM Properties instituted an arbitration proceeding with the AAA against Eckert under the contract that Fischer LLC had signed. *Id.* But "[s]hortly after the demand for arbitration was filed with the AAA, FJM Properties and Eckert[] agreed to have their dispute decided by a privately chosen arbitrator." *Id.* Pursuant to this additional arbitration agreement, FJM Properties and Eckert then *arbitrated for two years*, before Eckert ceased participating in the arbitration and filed suit in federal court, arguing that Eckert "was somehow misled by FJM whether it was a party to the Contract" and had only been arbitrating on the basis of this mistake. *Eckert/Wordell Architects, Inc. v. FJM Properties of Willmar, LLC*, No. CIV. 12-968 RHK/JJG, 2013 WL 1942167, at *2 (D. Minn. May 9, 2013). The district court was rightly "befuddled" by that argument, as Eckert *drafted* the Contract and has, at all times, had access to it." *Id.* (emphasis in original). Given this procedural history and the second arbitration agreement between FJM Properties and Eckert to use a private arbitrator, the decision should not be read as addressing arbitrability issues between a signatory and a nonsignatory to an arbitration agreement.

Appellate Case: 22-2664    Page: 46    Date Filed: 11/21/2022 Entry ID: 5219588

or consolidat[ing] disputes by or against others in any arbitration." *E.g.* App. 816; R. Doc. 758-1 at 10. ***Nowhere*** in its brief does HomeServices address that key language, which prohibits joining or consolidating disputes by or against others in arbitration, even though that is precisely what HomeServices seeks to do. *Id.*; *see also* ADD-15 (reaching similar conclusion, citing R. Doc. 218-2, p. 92). That failure alone requires rejecting its appeal.

**Second**, HomeServices argues that a delegation agreement exists where the parties incorporate the AAA rules, Br. at 40, but this argument has multiple flaws. First, it overlooks that ***none*** of the seventeen versions of the Listing Agreement attached to its 2022 Motion (which span portions of 2019 through 2022) mentions or incorporates ***any*** AAA rules, and even those few versions that do (all pre-dating 2019 and attached to its prior motion) do not specify any particular set of AAA rules.[12] HomeServices does not even specify which time periods or regions used versions of the Listing Agreement that referred to any AAA rules, merely saying that "many" of the versions do so. Br. at 41. Its appeal thus fails to advise the Court

---

[12] The Missouri Supreme Court has held that Missouri law gives effect to incorporation by reference in a contract ***only*** when the contract "make[s] clear reference to the document and describe[s] it in such terms that its identity may be ascertained beyond a doubt." *State ex rel. Pinkerton v. Fahnestock*, 531 S.W.3d 36, 45 (Mo. banc 2017). In addition, as the District Court found, the language does not even require use of the AAA rules, as it alternatively permits use of any "such neutral arbitrator agreed to by the parties." *See* ADD-12 & n.8.

Appellate Case: 22-2664    Page: 47    Date Filed: 11/21/2022 Entry ID: 5219588

or Plaintiffs which time periods or regions HomeServices is even seeking to excise from the Class Definition and should be rejected for again failing to meaningfully articulate its argument. *Sitzer*, 12 F.4th at 855 & n.2.

Moreover, HomeServices overlooks that the relevant "parties" for this analysis — class members and HomeServices — by HomeServices's own admission ***have no agreement*** of any kind. App. 324; R. Doc. 218 at 7. In similar circumstances, courts reject efforts by non-signatories to claim they nonetheless have a "delegation agreement" with plaintiffs. *See, e.g.*, *Lavigne v. Herbalife, Ltd.*, 967 F.3d 1110, 1117–18 (11th Cir. 2020).[13]

In *Lavigne*, the plaintiffs were distributors whose contracts with Herbalife included an arbitration clause with language incorporating the AAA's Commercial Arbitration Rules. *Id.* Plaintiffs, however, sued certain other "top distributors" who were not parties to the contract with Herbalife and who were not among the Herbalife

---

[13] *See also The Republic of Iraq v. BNP Paribas USA*, 472 F. App'x 11, 13 (2d Cir. 2012) (holding that "evidence of intent to have an arbitrator determine its jurisdiction with regard to disputes 'referred by either Party'" did "not clearly and unmistakably demonstrate their intent to have the arbitrator determine its jurisdiction with respect to any dispute raised by a *non-party*.") (emphasis in original); *The Muecke Co., Inc. v. CVS Caremark Corp.*, No. CV V-10-78, 2012 WL 12535439, at *23 (S.D. Tex. Feb. 22, 2012) (same); *Soto v. Am. Honda Motor Co.*, 946 F. Supp. 2d 949, 954 (N.D. Cal. Oct. 3, 2012) (same); *Upper Lakes Towing Co. v. ZF Padova SpA*, No. 2:08-CV-63, 2009 WL 4730762, at *4 (W.D. Mich. Dec. 4, 2009) (same).

39

"subsidiaries, affiliates, officers"[14] and the like included in that arbitration clause. *Id.* Just as HomeServices does, the "top distributors" defendants "argue[d] that the question of whether the aggrieved distributors agreed to arbitrate their claims against them is an issue of arbitrability that the arbitration clauses delegated to an arbitrator." *Id.* Noting that sending "threshold questions of arbitrability to an arbitrator" is proper "only when the parties have agreed to do so," the Eleventh Circuit explained that "[b]ecause there was no contract, the aggrieved distributors [ / plaintiffs] have not agreed to anything with the top distributors." *Id.*; *see also GNH Grp., Inc. v. Guggenheim Holdings, L.L.C.*, No. CV 19-1932-CFC, 2020 WL 4287358, at *5 (D. Del. July 27, 2020) ("Plaintiff and the Non-Signatory Defendants have not previously agreed to anything."). The same is true here.

The Eleventh Circuit's *Lavigne* decision is also consistent with cases from the Second and Ninth Circuits. In *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005), the Second Circuit "recognize[d] that just because a signatory has agreed to arbitrate issues of arbitrability with another party does not mean that it must arbitrate with any non-signatory."

---

[14] Notably, the Listing Agreements lack such catch-all, corporate family language, as their language instead consistently limits their terms and applicability, including the arbitration provisions, to "the parties to this Agreement" and further expressly bars any joinder or consolidation of disputes "by or against others" not party to the Listing Agreement. *E.g.* App. 816; R. Doc. 758-1 at 10.

Appellate Case: 22-2664     Page: 49     Date Filed: 11/21/2022 Entry ID: 5219588

The Ninth Circuit's decision in *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122 (9th Cir. 2013), is similar. There, a class sued Toyota for faulty car design, and Toyota sought to enforce an arbitration clause in the contracts between class members and their dealerships, to which Toyota was a non-signatory. That arbitration clause, which referenced the AAA Rules, narrowly stated "that '[e]ither you or we may choose to have any dispute between you and us decided by arbitration.'" 705 F.3d at 1127. The Ninth Circuit explained the contract showed "Plaintiffs' intent to arbitrate arbitrability with the Dealerships and no one else," and the Dealerships were not defendants in that case. *Id.* And it concluded there was an "absence of clear and unmistakable evidence that Plaintiffs agreed to arbitrate arbitrability with nonsignatories" and held "the district court had the authority to decide whether the instant dispute is arbitrable." *Id.*

**Third**, the second sort of purported "delegation agreement" on which HomeServices relies is the contention that the Listing Agreements "state broadly that '[a]ny controversy or claim' or '[a]ny dispute or claim' between the parties, including claims related to the agreement's 'interpretation, enforcement or breach' will be settled by binding arbitration," as HomeServices claims such phrasing is "consistently read . . . to indicate a delegation of gateway disputes of arbitrability to the arbitrator." Br. at 43 (quoting Listing Agreements). But HomeServices overstates

41

the cases on which it relies,[15] and the language used in those cases bears no resemblance to that used in the Listing Agreements.

HomeServices appears to suggest that merely using words or phrases such as "interpretation, enforcement or breach" in an arbitration provision constitutes a separate "delegation agreement," Br. at 43,[16] but that is not so. For instance, HomeServices parenthetically describes *Driver* as simply using the phrase "interpretation, applicability, enforceability, or formation" as sufficient to show a delegation agreement, Br. at 44, but consider the chart below comparing the full relevant language in the Listing Agreement with that used in *Driver*:

---

[15] *See* Br. at 43–44 (citing among others *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63 (2010), *Driver v. BPV Mkt. Place Invs., L.L.C.*, No. 4:17-CV-1607 CAS, 2018 WL 3363795 (E.D. Mo. July 10, 2018), *Mitchell v. EEG, Inc.*, No. 3:15CV-00903-JHM, 2016 WL 2903286 (W.D. Ky. May 18, 2016), *Brown v. Five Star Quality Care, Inc.*, No. 2:15-CV-4105-RMG, 2016 WL 8710474 (D.S.C. Jan. 8, 2016), and *Mumin v. Uber Techs., Inc.*, 239 F. Supp. 3d 507 (E.D.N.Y. 2017).

[16] *See also* App. 588; R. Doc. 232 at 3 (HomeServices's prior contention that merely using the word "interpretation" served as the "first of the two" purported "delegation provisions" in the Listing Agreements).

42

| **Listing Agreement** | ***Driver* Arbitration Agreement** |
|---|---|
| Any dispute or claim between the parties to this Agreement, its interpretation, enforcement or breach (which includes tort claims arising from fraud and fraud in the inducement), will be settled by binding arbitration.<br><br>App. 816; R. Doc. 758-1 at 10. | *The Arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable,* except that any determination as to the enforceability of the class/collective action waiver shall be made solely by a court.<br><br>2018 WL 3363795, at *2 (emphasis in original). |

These provisions are nothing alike, and the language in the Listing Agreement does not "clearly and unmistakably" commit decision on all threshold issues exclusively to an arbitrator, in contrast to the express language doing so in *Driver*.

The other cases cited by HomeServices are similarly distinguishable,[17] or

---

[17] *See Soars v. Easter Seals Midwest*, 563 S.W.3d 111, 113 (Mo. 2018), *abrogated in part by Theroff v. Dollar Tree Stores, Inc.*, 591 S.W.3d 432 (Mo. 2020) (language stated the "Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable"); *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 877 (6th Cir. 2021) (language similar to that in *Soars*); *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1263 (11th Cir. 2017) (language similar to *Soars* and *In re StockX*); *Brown v. Five Star Quality Care, Inc.*, No. 2:15-CV-4105-RMG, 2016 WL 8710474, at *3 (D.S.C. Jan. 8, 2016) (delegation-agreement language stated "[a]ll challenges to the enforceability of any (***Footnote continued***)

43

involve circumstances in which the plaintiff failed to challenge the delegation agreement.[18] Plaintiffs properly did so here under *Shockley*, 929 F.3d at 1018.

The District Court properly decided all non-waiver issues raised by HomeServices. This Court too, if it does not simply affirm based on litigation-conduct waiver, should decide the merits of any other arguments properly presented by HomeServices.

## V. HomeServices, as non-signatory, is not entitled to enforce any arbitration agreement in the Listing Agreements between class members and non-party brokers due to the mutual prohibition on joining or consolidating disputes or parties in arbitration, language that HomeServices ignores

In Section IV of its Argument, HomeServices re-asserts that a delegation agreement exists between it and certain class members, Br. at 45, but it does so again without addressing its prior concession that no "class member has any contract or direct relationship with HomeServices relevant to the claims asserted in this case," App. 324; R. Doc. 218 at 7. HomeServices also quotes *De Angelis v. Icon Ent. Grp.*

---

provision of this Agreement shall be brought before the arbitrator, and the arbitrator shall rule on all questions regarding the interpretation and enforceability of this Agreement"); *Mumin v. Uber Techs., Inc.*, 239 F. Supp. 3d 507, 522–23 (E.D.N.Y. 2017) (similar).

[18] *See Rent-A-Center*, 561 U.S. at 72–73; *Mitchell*, 2016 WL 2903286, at *3.

44

*Inc.*, 364 F. Supp. 3d 787, 796 (S.D. Ohio 2019), to contend that for a court to decide whether plaintiffs are "'bound to arbitration with parties that [they] allege are nonsignatories would be to engage in the type of analysis that the Supreme Court held impermissible in *Henry Schein*.'" Br. at 45 (quoting *De Angelis*).

That argument misunderstands *Henry Schein*, which over a dozen times used phrases like "the ***parties'*** agreement," "the ***parties'*** contract," and "the ***parties'*** decision as embodied in the contract," etc. *See generally Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524 (2019) (emphasis added). The Court was also careful to emphasize that, "[t]o be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." *Id.* at 530. The holding in *Henry Schein* was simply that, when the parties to a contract have some form of a delegation agreement (albeit one with a confusing and vague carveout for actions seeking injunctive relief, as in that case), then that delegation agreement controls and a court must send even "wholly groundless" arbitrability disputes to the arbitrator. The Court did not hold that a defendant may simply point to ***any*** delegation agreement in ***any*** contract to which the plaintiff is a party and then require arbitration without establishing that ***an agreement between the moving defendant and the plaintiff*** exists.[19]

---

[19] *See, e.g.*, *Shockley v. PrimeLending*, 929 F.3d 1012, 1018 (8th Cir. 2019) (holding that any purported delegation agreement must be valid under Missouri contract law, (***Footnote continued***)

45

This Court should therefore consider, and reject, each of the three grounds that HomeServices contends under Missouri law permit it, as a non-signatory, to enforce the narrow, party-specific arbitration provisions in the Listing Agreements at issue between certain Plaintiff class members and non-party brokers.

### A. So-called single-unit estoppel does not apply

HomeServices argues (Br. at 47) that a single paragraph in Plaintiffs' Complaint referring to the "HomeServices Defendants" somehow treated "HomeServices and its Missouri subsidiaries as one 'single unit'" such that HomeServices became entitled to assert arbitration rights found in contracts between class members and non-party brokers ReeceNichols and BHH KC, even though those contracts expressly limited their application to the parties to those agreements and prohibited both class members and those non-party brokers from "join[ing] or consolidat[ing] disputes by or against others in any arbitration." *E.g.* App. 816; R. Doc. 758-1 at 10. Missouri law, properly considered, does not support this argument.

Under Missouri law, the only parties who have standing to enforce a contract are the signatories to the contract or any third-party beneficiaries of that contract. *Verni v. Cleveland Chiropractic Coll.*, 212 S.W.3d 150, 153 (Mo. banc 2007). Another circumstance in which a non-signatory might enforce a contract's

---

which means showing an offer, acceptance, and bargained-for consideration between the parties to the purported delegation agreement).

Appellate Case: 22-2664    Page: 55    Date Filed: 11/21/2022 Entry ID: 5219588

provisions are when "'the very basis of the claim against the non-signatory was that it had breached duties and responsibilities purportedly assigned it by the agreement.'" *Abdiana Props., Inc. v. Bengston*, 575 S.W.3d 754, 762 (Mo. App. 2019) (quoting *Netco, Inc. v Dunn*, 194 S.W.3d 353, 361 (Mo. banc 2006)). But that cannot be the case here, as Plaintiffs' claims against HomeServices do not ***not*** arise out of Listing Agreements between class members and non-party brokers, but rather out of HomeServices's anticompetitive conduct in directing, controlling, encouraging, and participating in the Challenged Restraints. Moreover, HomeServices is "a complete stranger to the [Agreement], did not sign [it], is not mentioned in [it], and performs no function whatsoever relating to [its] operation." *PRM Energy Sys., Inc. v. Primenergy, L.L.C.*, 592 F.3d 830, 836 (8th Cir. 2010) (internal quotation omitted).[20]

These factors distinguish *State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798 (Mo. banc 2015), and *Morgan v. Ferrellgas, Inc.*, 8 F.4th 795 (8th Cir. 2021), two other cases on which HomeServices relies. *See* Br. at 46, 49. As the courts highlighted in those cases, the plaintiffs there asserted claims against non-signatory defendants that

_____

[20] *PRM Energy* affirmed a decision to compel arbitration, but it is distinguishable. In that case, the claims at issue were for tortious interference with, and inducement to breach, the agreement containing the arbitration provision. *PRM Energy*, 592 F.3d at 832. Thus, the claims required the court to construe and apply the agreement. That is not the case here.

Appellate Case: 22-2664     Page: 56     Date Filed: 11/21/2022 Entry ID: 5219588

treated all defendants as "as though they were signatories to the" contract at issue. *Kerr*, 461 S.W. at 814. For instance, in *Kerr*, the plaintiff contended that each of the four defendants "is responsible for the single act of firing him due to his age while he was under contract," and the court reasoned that if those defendants were "not bound by the contract, including the agreement to arbitrate, then [plaintiff] has failed to state any basis on which these non-signatory defendants employed him or could be liable for his firing." 461 S.W.3d at 815; *see also* Br. at 46 (quoting *Dominium Austin Partners, LLC v. Emerson*, 248 F.3d 720, 728 (8th Cir. 2001), as finding it "would be inequitable" if plaintiffs could claim certain defendants "are liable for failure to perform under a contract and at the same time to deny that they are contractual parties in order to avoid enforcement of the arbitration clause"). That bears no resemblances to Plaintiffs' allegations here.

Finally, this Court should also reject HomeServices's arguments regarding "single-unit" estoppel because it did not even mention let alone explain how the District Court erred in finding that the Listing Agreements "themselves prevent nonsignatories from being treated jointly for arbitration purposes." ADD-15. As the District Court observed, "[e]ven if Plaintiffs had joined ReeceNichols and BHH KC to this lawsuit and asserted claims against them, the Arbitration Agreements do not allow ReeceNichols, BHH KC, or Plaintiffs to 'join or consolidate disputes . . . against' HomeServices 'in any arbitration.'" *Id.* (quoting R. Doc. #218-2, p. 92).

Given that HomeServices failed to challenge this ground of the District Court's ruling in is principal Brief, this Court should conclude HomeServices has forfeited any challenge to it.

### B. Equitable or alternative estoppel does not apply

HomeServices's arguments relating to equitable or alternative estoppel, Br. at 49–52, fail under controlling Missouri and Supreme Court case law. HomeServices begins its argument by quoting a case — *Barton Enters, Inc. v. Cardinal Health, Inc.*, No. 4:10 CV 324 DDN, 2010 WL 2132744, at *2 (E.D. Mo. May 27, 2010) — where the arbitration clause at issue applied to "all controversies, disputes or claims arising between us ***and/or our officers, directors, parents, affiliates, agents, employees or attorneys***." (emphasis added); *see* Br. at 49–50 (quoting *Barton*). No such language appears in the Listing Agreements, and *Barton* hurts, rather than helps, HomeServices.

In addition, relying on *Barton* to argue that a non-signatory may compel arbitration because the signatory's claims were allegedly "'so closely intertwined with the agreement containing the arbitration clause,'" *id.* (quoting *Barton*), is contrary to Missouri law. "In Missouri, courts have rejected the 'inextricably intertwined' argument." *Scottrade, Inc. v. Variant, Inc.*, No. 13CV1710, 2015 WL 4605734, *6 (E.D. Mo. July 30, 2015) (citing *Netco*, 194 S.W.3d at 362-61) (refusing to allow non-signatory to compel arbitration). "No matter how intertwined

49

given claims are or how derivative one claim is of another, the parties must have agreed to arbitrate in order for one to compel arbitration." *Jones v. Paradies*, 380 S.W.3d 13, 18 (Mo. App. 2012) (refusing to allow non-signatory to compel arbitration). Missouri courts apply this rule because "[t]to compel arbitration of non-signatory claims — even those 'inextricably intertwined' with signatory claims — is inconsistent with the overarching rule that arbitration is ultimately a matter of agreement between the parties." *Springfield Iron & Metal, LLC v. Westfall*, 349 S.W.3d 487, 490 (Mo. App. 2011) (citing *Netco*, 194 S.W.3d at 361-62); *see also Lamps Plus*, 139 S. Ct. at 1416 (emphasizing that "consent" is the "first principle" in the arbitration context).

As to other cases cited by HomeServices purportedly showing that Missouri courts, and other courts "across the country," sometimes apply "equitable estoppel in antitrust cases," Br. at 50, the Supreme Court's recent decision in *Morgan v. Sundance* casts doubt on these cases. 142 S. Ct. 1708 (2022). In *Morgan*, the Supreme Court reversed and overruled cases from nine circuits that had incorrectly relied on a purported federal "policy favoring arbitration" to "invent special, arbitration-preferring procedural rules," there in the context of adding a "prejudice" prong to the litigation-conduct waiver analysis when no such requirement exists under ordinary state law contract principles. *Id.* at 1713–1714.

Under ordinary Missouri law, finding estoppel requires showing several

50

elements not present or even argued to be present here by HomeServices, including any purported "concealment of material facts" or "false or misleading conduct" by the party to be estopped, or detrimental reliance by the party seeking estoppel. *See, e.g.*, *Podschun v. Rice*, 769 S.W.2d 441, 442–43 (Mo. App. 1989); *Ethridge v. TierOne Bank*, 226 S.W.3d 127, 133 (Mo. banc 2007). In similar circumstances, where a party did "not even argue that it can establish detrimental reliance," a court concluded that the non-signatory defendant "cannot invoke equitable estoppel under Illinois law." *In re Dealer Mgmt. Sys. Antitrust Litig.*, 362 F. Supp. 3d 477, 487–89 (N.D. Ill. 2019).

### C. Close-relationship estoppel does not apply

HomeServices is also wrong that Missouri state law pertaining to purported "close relationships" among corporations or equitable estoppel permits it to enforce the arbitration agreements in the Listing Agreements between class members and the non-party brokers. Br. at 52–53. HomeServices again relies on *Barton*, *see* Br. at 52, but it involved significantly different arbitration language.

Under Missouri law properly considered, contentions that corporate entities are in the same corporate family and reflect a "close relationship" do not suffice to compel arbitration. In *Jay Wolfe Used Cars of Blue Springs, LLC v. Jackson*, 428 S.W.3d 683 (Mo. App. 2014), the plaintiffs signed two different agreements with two different corporate entities — both entities identified as Jay Wolfe, but one was

51

an LLC and one a D/B/A. One of the agreements contained an arbitration provision, the other did not, and the plaintiffs sued only the entity that signed the agreement without the arbitration clause. The non-signatory tried to enforce the arbitration agreement arguing, in part, that the close corporate relationship demanded it and that the two agreements were intertwined. The court rejected the motion to compel. 428 S.W.3d at 690-91. Thus, even though HomeServices and non-parties ReeceNichols or BHH KC may be in the same corporate family, Missouri law does not allow courts to ignore the corporate distinctions to compel arbitration.

> **D. The District Court properly focused on the specific wording of the arbitration clauses, including the repeated use of the word "Parties" and the mutual bar on adding or joining any other party to an arbitration proceeding**

Finally, HomeServices faults the District Court for focusing on the specific language used in the arbitration provisions of the Listing Agreements. *See* Br. at 53 (section title stating "the word 'parties' does not change this result" and criticizing the "district court and plaintiffs below [for] focus[ing] on the word 'parties' in the arbitration agreements"). Interpreting an arbitration provision rightly requires focusing on its specific terms and phrases, but throughout its Brief HomeServices steadfastly avoids the specific language at issue.

Appellate Case: 22-2664     Page: 61     Date Filed: 11/21/2022 Entry ID: 5219588

HomeServices ignores the key mutual-joinder bar language — that "Neither party will be entitled to join or consolidate disputes by or against others in any arbitration," App. 816; R. Doc. 758-1 at 10 — wording which both Plaintiffs and the District Court repeatedly quoted and discussed.[21] Yet the terms "join," "consolidate," and "against others" do not appear in HomeServices's Brief. HomeServices's complaint that Plaintiffs and District Court put too much "focus" on the specific language of the arbitration provisions should be understood as a conscious deflection from HomeServices's inability to mount any credible counterargument to the plain text on which Plaintiffs and the District Court relied.

HomeServices continues to have no substantive response, at all, to a central argument advanced by Plaintiffs and accepted by the District Court. Its appeal must fail in these circumstances, where it simply refuses to acknowledge, let alone rebut, a principal textual basis for the District Court's ruling against it.

## VI.   Even if HomeServices could enforce any arbitration agreement, Plaintiffs' claims do not fall within the narrow scope of the arbitration agreements at issue

A final, alternative ground on which this Court could affirm the judgment below is by finding that, even if HomeServices could enforce the arbitration

---

[21] *See,* ADD-3, 4, 11–13, 14, 15; App. 1056, 1066, 1067, 1077; R. Doc. 806 at 14, 24, 25, 35.

Appellate Case: 22-2664     Page: 62     Date Filed: 11/21/2022 Entry ID: 5219588

provisions, Plaintiffs' claims are beyond the purview of those provisions. Unlike other arbitration provisions that apply to any claim "arising out of" or "relating to" the agreement or the parties' dealings, the provision here limits its application only to controversies or claims "between the parties to this Agreement" concerning "its interpretation, enforcement or breach." App. 816; R. Doc. 758-1 at 10. The provision further specifies the outer bounds of the claims that fall within its scope by noting it "includes tort claims arising from fraud and fraud in the inducement." *Id.* Plaintiffs, however, do not seek to interpret, enforce, or remedy a breach of the Listing Agreements. The provision's limiting language confines the arbitration provision's reach to the enumerated topics.

To find Plaintiffs' claims fall within the scope of the narrow, party-specific arbitration language in the Listing Agreements would allow HomeServices to re-write and expand the scope of the arbitration provision, an interpretative approach that is contrary to Missouri law.[22] Indeed, HomeServices's arguments reflect that this is ***exactly*** what it is trying to do, as it contends Plaintiffs' antitrust claims "***arise from*** the commissions established in" the Listing Agreements. Br. at 51 (emphasis added). But the Listing Agreements do not use expansive language (such as all

---

[22] *See Triarch Indus., Inc., v. Crabtree*, 158 S.W.3d 772, 776 (Mo. banc 2005) (ambiguous arbitration provisions must be construed against the drafters, which here are non-party brokers ReeceNichols and BHH KC).

54

matters "arising from or relating to" a contract) to define the scope of arbitrable issues. This Court should reject HomeServices's attempts to re-write the Agreement's arbitration provision using broad, expansive "arising from" language and hold that Plaintiffs' antitrust claims do not fall under the provision's narrow, party-specific scope.[23]

## **CONCLUSION**

For the reasons stated above, this Court should affirm the District Court's Order denying Appellants' Motion to Compel Arbitration.

---

[23] Plaintiffs raised these arguments below, *see* App. 1082–1083; R. Doc. 806 at 40–41, yet HomeServices made no effort to address them in its principal Brief.

Dated: November 18, 2022          Respectfully submitted by:

BOULWARE LAW LLC

*/s/ Jeremy M. Suhr*
Brandon J.B. Boulware   MO Bar No. 54150
Jeremy M. Suhr          MO Bar No. 60075
Erin D. Lawrence        MO Bar No. 63021
BOULWARE LAW LLC
1600 Genessee, Suite 416
Kansas City, MO 64102
Tel:   (816) 492-2826
Fax:   (816) 492-2826
brandon@boulware-law.com
jeremy@boulware-law.com
erin@boulware-law.com

Matthew L. Dameron   MO Bar No. 52093
Eric L. Dirks          MO Bar No. 54921
WILLIAMS DIRKS DAMERON LLC
1100 Main Street, Suite 2600
Kansas City, Missouri 64105
Tel:   (816) 945-7110
Fax:   (816) 945-7118
matt@williamsdirks.com
dirks@williamsdirks.com

Michael Ketchmark   MO Bar No. 41018
Scott McCreight      MO Bar No. 44002
KETCHMARK & MCCREIGHT, P.C.
11161 Overbrook Rd. Suite 210
Leawood, KS 66211
Tel:   (913) 266-4500
mike@ketchmclaw.com
smccreight@ketchmclaw.com

*Attorneys for Plaintiffs-Appellees*

56

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this brief complies with the type-volume limitation in Rule 32(a)(1)(b)(i) of the Federal Rules of Appellate Procedure. This brief has been prepared using Microsoft Word for Microsoft 365, and according to that program the brief contains 12,998 words, excluding the items that may be exempted from computing any length limit as set forth in Rule 32(f). The brief was prepared using a fourteen (14) point Times New Roman font.

Dated: November 18, 2022     */s/ Jeremy M. Suhr*
                Jeremy M. Suhr
                Counsel for Plaintiffs-Appellees

Appellate Case: 22-2664  Page: 66  Date Filed: 11/21/2022 Entry ID: 5219588

## CIRCUIT RULE 28A(h) CERTIFICATION

The undersigned hereby certifies that I have filed electronically, pursuant to Circuit Rule 28A(h), a version of the brief in non-scanned PDF format. I hereby certify that the file has been scanned for viruses and that it is virus free.


Dated: November 18, 2022                     */s/ Jeremy M. Suhr*
                                             Jeremy M. Suhr
                                             Counsel for Plaintiffs-Appellees

58

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on November 18, 2022, an electronic copy of the Brief of Plaintiffs-Appellees was filed with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system, and as all participants in this case are registered CM/ECF users, service of the Brief will be accomplished by the CM/ECF system.

Dated: November 18, 2022

*/s/ Jeremy M. Suhr*
Jeremy M. Suhr
Counsel for Plaintiffs-Appellees

59